11 GREMILLION, J.
The plaintiff-appellant, LIGA/Mortem Risk Management (LIGA), appeals the judgment of the workers’ compensation judge finding that it failed to correctly calculate the average weekly wage of the defendant, J.M. Franks, and in assessing the employer, Ace Transportation, with penalties and attorney’s fees. For the following reasons, we affirm in part and reverse in part.
FACTS
Franks suffered a work-related acute myocardial infarction on February 5, 1988, while employed as the owner-operator of a truck leased to Ace Transportation. He suffered the myocardial infarction in Troy, Alabama, and was initially treated by Dr. Charles Porter, a cardiologist. He remained in Montgomery, Alabama until February 11, 1988, when he was transferred by ambulance to the Southwest Louisiana Medical Center in Houma, Louisiana. Franks’ treatment was taken over by Dr. Craig Walker, a cardiologist.
On March 9, 1998, LIGA filed a disputed claim for compensation alleging that Franks refused to provide it information pertaining to his Social Security earnings. In denying LIGA’s claim, Franks sought penalties and attorney’s fees for its arbitrary and capricious denial of workers’ compensation benefits through January 1989. In his pre-trial statement, Franks elaborated on his claim more fully, alleging that LIGA was arbitrary, capricious, unreasonable, and/or unjustified in terminating his weekly benefits on December 18, 1989, in not reinstating those benefits until April 3, 1993, and in not paying him back benefits for the period of time they were stopped. LIGA also enlarged its pleadings in its pre-trial statement by alleging that Lit was entitled to a credit for the overpayment of weekly benefits and an offset pursuant to La.R.S. 23:1225(0.
*624 At the hearing on the merits, the parties entered the following stipulations:
(1) Franks was employed by Ace on February 5,1988;
(2) He was injured as a result of a work-related accident;
(3) The law applicable to the matter was the law in effect on the date of the accident;
(4) The exhibit entitled “Summary of Earnings & Deductions” was admitted as Joint Exhibit Jl;
(5) Franks was currently receiving compensation benefits of $237.68 per week ($475.36 every two weeks); and
(6) That he was also receiving $697.00 in Social Security Retirement Benefits every month.
The parties further stipulated to the issues to be resolved by the workers’ compensation judge:
(1) The correct computation of Franks’ average weekly wage;
(2) The correct computation of his weekly compensation rate;
(3) Whether an overpayment or underpayment of compensation had occurred;
(4) Whether Ace was entitled to an offset pursuant to La.R.S. 23:1225, and if so, the correct amount of the offset; and
(5) Whether Franks was entitled to penalties and attorney’s fees because Ace and LIGA:
(a) Terminated weekly benefits on December 18,1989;
(b) Failed to reinstate benefits until April 3,1993; and
(e) Failed to pay past due compensation for the period of | ¡¡time benefits were stopped until March 3,1994.
The workers’ compensation judge issued written reasons and a judgment finding that bonuses paid by Ace to Franks’ wife, Mavern, should have been included in the computation of Franks’ average weekly wage, bringing his average weekly wage to $428.48 and his rate of compensation to $262.00. Thus, the workers’ compensation judge held that Ace underpaid compensation benefits to Franks in the amount of $13,947.53. He further held that LIGA was entitled to an offset of $246.00 from the date of judicial demand, July 31, 1998, and awarded Franks penalties and attorney’s fees due to Ace’s arbitrary, capricious, and unreasonable handling of his claim. In an amended judgment, the workers’ compensation judge held that LIGA was entitled to the offset on a monthly basis. LIGA suspensively appealed this judgment, and Franks answered seeking penalties and attorney’s fees based on LIGA’s frivolous appeal.
ISSUES
LIGA raises four assignments of error on appeal:
1) The workers’ compensation judge erred in assessing Ace with attorney’s fees pursuant to La.R.S. 23:1201.2, because it was insured.
2) The workers’ compensation judge erred in assessing Ace with penalties since it could not penalize LIGA.
3) The workers’ compensation judge erred in finding that the payments made to Franks’ wife should have been included in the calculation of his average weekly wage.
4) The workers’ compensation judge erred in assessing Ace with penalties for failing to include payments made to Franks’ wife in the calculation of his average weekly wage.
| ATTORNEY’S FEES
In its first assignment of error, LIGA argues that the workers’ compensation judge erred in assessing Ace with attorney’s fees pursuant to La.R.S. 23:1201.2. Franks argues that there was no error in the workers’ compensation judge’s finding since LIGA failed to introduce any evidence establishing the existence, terms, nature, or extent of its insurance coverage.
In February 1988, La.R.S. 23:1201.2 (emphasis added) provided in part:
*625 Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within .sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney’s fees
[[Image here]]
The burden of proving entitlement to attorney’s fees rest with the employee. However, an employer seeking to avoid liability for attorney’s fees based on the existence of compensation insurance coverage bears the burden of proving the nature and extent of coverage. Johnson v. Vinson Guard Service, Inc., 92-2187 (La.App. 1 Cir. 3/11/94); 636 So.2d 914, unit not considered, 94-1661 (La.9/2/94); 642 So.2d 1280. In this instance, however, we need not address this issue since Franks admitted in his answer that Ace was insured.
The eleventh question on the answer form provided by the Office of Workers’ Compensation states, “At the time of the alleged injury or occupational disease, workers’ compensation insurance was provided by.” In response to this question, Franks circled “ADMIT” and explained his answer further by stating, “Associated Risk Services Corp on Behalf of Anglo-American Ins. Co. (Bankrupt) — | sNow LIGA.” Franks’ admission acted as a judicial confession and was full proof against him. Polk Chevrolet v. Webb, 572 So.2d 1112 (La.App. 1 Cir.1990), writ denied, 575 So.2d 394 (La.1991). “A judicial confession is a party’s explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission or withdrawing the subject matter of the confession from issue.” Id. at 1115. Accordingly, since Franks admitted that Ace was insured, the workers’ compensation judge erred in assessing it with attorney’s fees. That portion of the judgment is reversed. Additionally, since we have found merit in this assignment of error, Franks’ request for penalties and attorney’s fees based on LIGA’s frivolous appeal are denied.
PENALTIES
In its second assignment of error, Ace argues that the workers’ compensation judge erred in assessing it with penalties since it could not assess LIGA with penalties.
At the time of Franks’ work-related accident, La.R.S. 23:1201(E) (emphasis added) provided:
If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee’s right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker’s compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be | ,-made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
*626 If payment is not made in accordance with La.R.S. 23:1201, penalties will be imposed unless the employer or insurer reasonably controverted the employee’s compensation claim or if the nonpayment resulted from conditions beyond the employer or insurer’s control. Spencer v. Gaylord Container Corp., 96-1230 (La.App. 1 Cir. 3/27/97); 693 So.2d 818. The decision to impose penalties is a factual question, which will not be disturbed on appeal in the absence of manifest error. Id. The analysis for determining whether an employee’s compensation claim has been reasonably controverted is:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers’ compensation case.
Hall v. McDonald Insulation, 537 So.2d 328, 332-33 (La.App. 1 Cir.1988), (quoting Chelette v. American Guarantee and Liab. Ins., Inc., 480 So.2d 363, 367 (La.App. 3 Cir.1985)).
On November 15, 1988, Franks was examined by Dr. Walker. At that time, he experienced no chest pain and no change in his EKG, with only infrequent, irregular heartbeats. Dr. Walker told him to return in three months. On November 22, 1988, Franks asked Dr. Walker if he could return to work. Dr. Walker told him to avoid strenuous isometric exercises, adhere to his diet, and maintain reasonable rest patterns. He restricted Franks to lifting no more than fifty to sixty pounds and to |7driving no more than ten hours at a time.
Anglo-American started paying workers’ compensation benefits to Franks on January 18, 1989, including a check for $12,201.00 for benefits owed from the date of injury. He received workers’ compensation checks from Anglo-American until it filed for bankruptcy; his last check was dated March 3, 1989. On March 8, 1989, Franks reported to Dr. Walker that he was experiencing occasional episodes of chest discomfort and worsening of his breathing problems. On April 12, 1989, Ace began paying workers’ compensation benefits to Franks. On June 2, 1989, LIGA assumed Anglo-American’s responsibilities and began making payments to Franks, but terminated his benefits on December 18, 1989, after receiving a report from Dr. W. Brooks Emory stating that Franks’ pulmonary status would not limit him from gainful occupation.
Franks began working for Custom Aggregates and Grinding, Inc. on March 16, 1991. In his affidavit, Franks stated that his friend gave him a job after his compensation benefits were terminated, since his wife was very sick and he needed the money. In May 1992, he complained of chest pain, dizziness, and dyspnea, and was only able to do three and one-half minutes on a treadmill. Dr. Walker stated that Franks was in a “really weak” condition and was suffering from a “terrible diminished exercise capacity.” At that point, he felt that Franks could no longer perform long-distance hauling, which included handling a 200 or more pound tarp, handling 100 or more pound chains, participate in unloading, and climbing onto his load more than once. Furthermore, Dr. Walker did not want Franks working more than eight hours a day. At his September 29, 1992 deposition, Dr. Walker verified that Franks was not |8physically qualified to drive a commercial vehicle, pursuant to 49 C.F.R. § 391.41, because he was diagnosed with myocardial infarction, suffered angina pectoris, dyspnea, and, he suspected, lung disease.
On May 5, 1993, Franks underwent a vocational evaluation to determine his current levels of vocational functioning and his future employability. At the end of the *627 evaluation, the vocational evaluation specialist, Bobby Roberts, stated that Franks’ vocational prognosis was “non-existent for ever returning to his customary and usual life long work of driving trucks. His vocational prognosis is non-existent for returning to any other form of sedentary to light work unless and until his current impairment from his cardiac condition could be resolved.”
Franks made several demands upon both LIGA and Ace for an immediate update of compensation benefits and reimbursement of medical expenses. Demands were made on July 15, 1992, August 13, 1992, October 7 and 16, 1992, December 10, 1992, January 5, 1993, and March 16 and 23, 1993. On April 3, 1993, LIGA reinstated Franks’ workers’ compensation payments; however, these payments were only prospective from that date. On November 10, 1993, LIGA calculated Franks’ average weekly wage at $356.88, his compensation rate at $237.68, and further determined that he was owed $21,965.10 in back compensation. On February 1, 1994, Franks made formal demand on both LIGA and Ace for payment of at least $21,965.10. On March 3, 1994, LIGA sent two checks to Franks’ counsel: $15,499.20 in back compensation and $5,800.86 in supplemental earnings benefits.
The workers’ compensation judge awarded Franks penalties, finding that Ace was unreasonable in terminating his medical benefits and weekly compensation 19benefits on December 19, 1989, in not paying him benefits for the period of December 19, 1989 through March 16, 1991, the date he started working for Custom Aggregates, and for the period of March 16, 1991 through April 3,1993.
Considering the evidence recounted above, we cannot say that this finding is unreasonable. On November 22, 1988, Dr. Walker placed conditions on the work that Franks could perform. However, Dr. Walker later found Franks physically unfit to work as a commercial driver pursuant to 49 C.F.R. § 391.43, since he had a diagnosis of myocardial infarction and suffered from angina pectoris, dyspnea, and lung disease. Pursuant to this regulation, Franks would have been physically unfit from February 5, 1988, the date he suffered the myocardial infarction. Despite Dr. Walker’s September 29, 1992 pronouncement and formal demands by Franks, neither LIGA nor Ace reinstated his workers’ compensation benefits until April 3, 1993. However, this reinstatement did not include back compensation owed for the period of time compensation was stopped. Franks did not receive compensation owed for this period of time until March 3, 1994, despite LIGA’s acknowledgment of his entitlement on November 10, 1993. Since Franks made several formal demands on both LIGA and Ace, we cannot say that the workers’ compensation judge erred in awarding him penalties for Ace’s failure to pay the compensation owed to him.
BONUSES
In its third and fourth assignments of error, LIGA argues that the workers’ compensation judge erred by including the bonuses in the computation of Franks’ compensation benefits and in assessing it with penalties for failure to do the|insame.
In his affidavit, which was admitted into evidence, Franks stated that he and Ma-vern jointly owned the truck, which they leased to Ace, and that Mavern took care of the bookkeeping and accounting for the work done for Ace and signed all contracts and agreements between them and Ace. Additionally, he stated that the check stubs introduced accurately reflected the dates worked by him and the gross salaries paid to him by Ace between February 7, 1987 and February 5, 1988, and that they accurately reflected the extra five percent bonuses paid by Ace to Mavern during that same period of time. Franks further stated that the bonuses were paid when, through his own individual efforts, he procured and performed the hauling *628 jobs which resulted in the payment of bonuses to -Mavern.
In Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989), the supreme court held that bonuses received by an employee should be included in the calculation of his average weekly wage. The court, quoting MALONE AND JOHNSON, 14 Louisiana Civil Law Treatise, Workers’ Compensation § 324 at 93 (1980), stated: “In determining the amount of pre-injury wages an employee earned, ‘[a]ny money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of wages.’ ” Id. at 1007-OS.
Ace argues that there is no evidence in the record, other than Franks’ self-serving testimony, showing that it knew that the bonuses paid to Mavern were supposed to be considered part of his wages. In assessing Ace with penalties for failing to include the bonuses in the calculation of Franks’ compensation benefits, the InWorkers’ compensation judge stated that Ace was aware of its own salary and bonus payments and its agreement with Franks that he would receive a bonus for each hauling job he procured for Ace.
We find no error in this finding since Ace was in the best position to know that the bonuses it paid to Mavern were based upon Franks’ efforts in securing hauling jobs. Accordingly, the workers’' compensation judge’s computation of Franks’ compensation benefits is affirmed, as well as the judgment awarding penalties to Franks based on Ace’s failure to include those bonuses in its calculation of his compensation benefits. These assignments of error are dismissed for being without merit.
CONCLUSION
For the foregoing reasons, the judgment of the workers’ compensation judge casting Ace with attorney’s fees is reversed. The judgment is affirmed in all other respects. Franks’ request for penalties and attorney’s fees based on LIGA’s frivolous appeal are denied. The costs of this appeal are assessed twenty-five percent to the plaintiff-appellee, J.M. Franks, and seventy-five percent to the defendant-appellant, LIGA/Mortem Risk Management.
AFFIRMED . IN PART AND REVERSED IN PART.