819 So.2d 1059 (2002)
John CHAMPAGNE
v.
STATE of Louisiana LOUISIANA STATE UNIVERSITY.
No. 2001 CA 0242.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
*1061 Michelle Sorrells, Baton Rouge, for Plaintiff/Appellant John Champagne.
Gloria Angus-Bolds, Baton Rouge, for Defendant/Appellee State of Louisiana Louisiana State University.
Before: FITZSIMMONS, DOWNING and LANIER,[1] JJ.
DOWNING, J.
Defendant Louisiana State University (LSU) appeals a ruling by the workers' compensation judge (WCJ) in favor of plaintiff, John Champagne. The judgment found that Champagne sustained an accident in the course and scope of his employment with LSU, and that his on-the-job injury during subsequent employment did not aggravate his neck condition, so LSU's consent was not necessary to settle his intervening injury claim. The judgment awarded him continued medical benefits. LSU also appeals being assessed with penalties and attorney fees for its failure to pay Champagne's medical bills within sixty days as mandated by La. R.S. 23:1201E. For the reasons that follow, we affirm the ruling of the workers' compensation judge.

STANDARD OF REVIEW
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556.

FACTS AND PROCEDURAL HISTORY
Mr. Champagne allegedly injured his neck on May 4, 1998 while working as a Facility Maintenance Manager III, HVAC section, at LSU. Although he allegedly reported the injury, he did not seek medical attention until two days afterwards. Subsequently, he filed a claim for workers' compensation benefits alleging that he struck his head on a stairwell and injured his head and neck.
On June 19, 1998, while still under a doctor's care, Mr. Champagne resigned his job with LSU and began working as a service technician for ACE Air Conditioning where he suffered several accidents but remained employed until February 3, 1999. Immediately upon leaving ACE, Mr. Champagne began working for Trouth Air Conditioning in Lake Charles, La., where he suffered a rotator cuff injury to his shoulder. Mr. Champagne settled the claim with Trouth for $20,000, but did so without written approval from LSU.
*1062 The WCJ found in favor of Mr. Champagne. The judgment stated that his subsequent accident while working at Trouth did not aggravate his neck condition on a permanent basis and that therefore, written consent was not necessary to settle that claim because Trouth was not a third party for purposes of La. R.S. 23:1101C. Judgment was signed on September 25, 2000, and from that judgment LSU appeals alleging:
(1) That the court erred in finding that an accident, as defined by the statute, occurred during the course and scope of employment with LSU, when no evidence other than plaintiff's testimony corroborated his story;
(2) That the court erred in finding that the accident caused an injury to plaintiff when the evidence strongly suggests that plaintiff had a pre-existing condition and was involved in unrelated, intervening events and accidents, and there was no evidence of an injury;
(3) That the court erred in finding that claimant proved the "causal connection" between the accident and the disability, when there is no proof of a disability offered in the record and new symptoms developed after intervening events and accidents;
(4) That the court erred in not finding that plaintiffs injury was aggravated by the intervening accidents and or events when the medical evidence strongly indicate that new symptoms were not present until after the events and accidents;
(5) In the alternative, that the court erred in not applying the forfeiture statute to terminate plaintiffs right to future medical expenses when the evidence shows that plaintiff settled with third party without seeking consent of LSU when LSU was paying a compensable claim.
(6) Finally, that the court erred in assessing LSU with penalties and attorney fees for making late payments to itself when the record indicates that LSU authorized the medical visits and paid, in good faith, all the medical bills at least a year before the disputed claim was ever filed.
Mr. Champagne answered the appeal alleging that the WCJ erred in only awarding $500 for attorney fees in the judgment and asks for additional attorney fees for representation on this appeal.

DISCUSSION
LSU's first assignment of error alleges that the workers' compensation court erred in finding that Mr. Champagne had an "accident" while working at LSU. La. R.S. 23:1021 defines "Accident" as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
As LSU acknowledges, in certain events a worker's testimony is sufficient to discharge the burden of proving an "accident," provided that two elements are first satisfied: that (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances surrounding the alleged incident. Smith v. Louisiana Welding Supply Co., Inc., 331 So.2d 606 (La.App. 1 Cir.1976).
LSU argues that no evidence other than plaintiffs self-serving testimony was presented to corroborate his story that an accident actually occurred. To support this position, LSU points out that in spite of Mr. Champagne claiming a co-worker *1063 witnessed the accident, he did not call the witness to testify at trial. LSU further argues that Mr. Champagne claimed he was involved in an accident on May 4, 1998 but medical records show that he did not experience certain symptoms until over nine months later. LSU says that the only symptoms he complained of on the original accident report were pains to his head and neck.
Concerning the first Smith element, LSU argues that the contradictions between the medical records and Mr. Champagne's testimony, along with the fact that he kept working in his field, discredits his testimony. The WCJ, however, did not find these inconsistencies sufficient to discredit the testimony. There is sufficient evidence in the record to support Mr. Champagne's version of the accident.
The second Smith element is that the evidence be corroborated by the circumstances following the alleged incident. While LSU argues that there is no corroboration, in particular that Mr. Champagne failed to call an alleged witness, there was evidence in the record that he told his supervisor and was approved for treatment and he continued having neck and head pain. The WCJ clearly accepted these facts as sufficient to corroborate Mr. Champagne's testimony. The WCJ was not manifestly erroneous in accepting Mr. Champagne's evidence that an accident happened.
Our review of the testimony at trial indicates that Mr. Champagne did report the claim and that ongoing medical treatment was requested and approved by LSU. The general rule calls for a liberal construction of workers' compensation laws in favor of the claimant. Sumrall v. Luhr Brothers, 95-0779, p. 7 (La.App. 1 Cir. 12/15/95), 665 So.2d 796, 800. The WCJ found that Mr. Champagne sustained his injuries during the course and scope of his employment. There exists medical documentation to support Mr. Champagne's assertion, and there is a sufficient link between his original neck and head injury and his present situation. The WCJ was not manifestly erroneous in finding that Mr. Champagne had an "accident" that complied with the definition in La. R.S. 23:1021. Therefore, LSU's first assignment of error is without merit.
LSU's second, third and fourth assignments of error deal with causation. LSU alleges that the injury was caused or aggravated by a pre-existing condition or intervening events, that there was no evidence of injury or that Mr. Champagne suffered a disability, and that the development of symptoms after the intervening events indicate a cause other than the accident at LSU as the source of his injuries.
Louisiana Revised Statute 23:1317 explains that although more relaxed rules of evidence are used by the WCJ, the findings of fact must be based upon competent evidence and the objective symptoms must be proven and not be within the physical and mental control of the injured employee himself. A claimant has the burden of proving, by a preponderance of the evidence, that a work-related accident either caused or contributed to the disability. It is not necessary that the exact cause be found. LeBlanc v. Cajun Painting, Inc., 94-1609, pp. 9-10 (La.App. 1 Cir. 4/7/95), 654 So.2d 800, 806. The appellate court cannot set aside a finding of fact in the absence of manifest error. Id. at 807.
The consequences of a work-related disability are not always fully apparent at the time the accident occurs. The disability is presumed to be the result of the work-related accident if the claimant was in good health before the accident and the symptoms of the disability appear after the accident and continue to manifest themselves. *1064 This presumption is available providing that sufficient medical evidence is introduced to show a reasonable possibility of a causal connection between the disability and the work-related accident, or that the nature of the accident raises a natural inference that such a causal connection exists. Id. at 806-807.
Based on the fairly healthy state of Mr. Champagne before the LSU accident and the consistent, recurring symptoms typical of this type of dysfunction since the accident, we find no manifest error in the WCJ's finding that his symptoms were caused by the accident and not by some pre-existing condition or intervening event. The treating physician, Dr. Rill, sent Mr. Champagne for testing and further testing which confirmed that his symptoms stemmed from the neck injury and not from carpal tunnel syndrome or another accident. And the referring physician, Dr. Zuckerman, testified that Mr. Champagne's current nerve-root complaints with his hands are consistent with and causally connected to the original injuries complained of in May 1998. While LSU counters that all treating physicians agree that the objective medical findings indicate that Mr. Champagne already had a degenerative disc disease and his pain is associated with the natural progression of the disease and not with the alleged accident, the testimony of Dr. Rill and Dr. Zuckerman adequately establishes a causal connection between the accident and the aggravation of a pre-existing injury caused by this accident. The WCJ was not manifestly erroneous in this factual finding. Thus, the second assignment of error is without merit.
Louisiana jurisprudence is clear that in a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737. The WCJ specifically found that Mr. Champagne's subsequent employment did not aggravate the injuries he received while working at LSU, and testimony from his treating physicians supports this finding. While LSU's version of events is plausible and we may have evaluated the evidence differently, the WCJ agreed with Mr. Champagne. We therefore find no manifest error in the WCJ's decision and thus the third and fourth assignments of error are without merit.
The fifth assignment of error alleges that the WCJ erred by not applying the forfeiture statute in terminating Mr. Champagne's benefits when he settled a third party workers' compensation claim without LSU's consent. LSU cites La. R.S. 23:1102B which provides the following:
Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses.
LSU's position is that Mr. Champagne injured and re-injured himself during several intervening accidents during his employment with Ace and/or with Trouth. Mr. Champagne settled his claim against Trouth without the written consent of LSU. The definition of "third person" is important here. La. R.S. 23:1101C provides the following:
"[T]hird person" shall include any party who causes injury to an employee at the time of his employment or at any time *1065 thereafter provided the employer is obligated to pay benefits under this Chapter because the injury by the third party has aggravated the employment related injury.
Our review of the record shows that the WCJ specifically found that "[w]ritten consent was not necessary by LSU in order for John Champagne to settle his worker's compensation claim with Trouth because Louisiana State University is not a third party for purposes of R.S. 23:1101(C)." Not only did the WCJ find that Trouth did not aggravate Mr. Champagne's employment related injury, and therefore, he did not need to get LSU's approval of a settlement, LSU's tort claim is not covered by La. R.S. 1101A, because the Trouth injury is not one for which Trouth has "a legal liability to pay damages." See La. R.S. 23:1032 and La. R.S. 23:1101A.[2] The workers' compensation claim with Trouth involved injuries to his rotator cuff, while his injuries from the LSU accident involved his neck and head. The medical record indicates that the Trouth accident did not aggravate the original condition on a permanent basis. We conclude that the WCJ had sufficient evidence to find that LSU was not a third party for purposes of the forfeiture statute La. R.S. 23:1101C. Thus, the fifth assignment of error is without merit.
LSU's sixth and final assignment of error alleges that the WCJ erred in assessing it with penalties and attorney fees. La. R.S. 23:1201F provides the following:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
. . . .
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. (Emphasis added.)
After a careful review of the record, we conclude that LSU had no reasonable basis to believe that the benefits were not due. LSU does not disagree and in fact approved payment of the medical bills. However, the claim did not get paid in a timely manner. The unambiguous language of the statute clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201.
Since the bill was not controverted, we consider whether or not it went unpaid from a condition beyond LSU's control. The record is clear that LSU received a bill on June 11, 1998 and apparently approved this bill for payment in July. However, LSU's Office of Public Safety and Risk Management did not pay the bill until November 16, 1998, which is over 60 days after the bill was submitted. The record also reflects that LSU received *1066 other bills that were not paid in a timely manner. LSU maintains that it was in good faith when it approved payment but that the first bill was misplaced or lost by the Office of Public Safety and Risk Management and somehow did not get paid promptly but does not attempt to explain the other late payments. As discussed above, penalties shall be assessed unless the violations resulted from conditions over which the employer had no control. LSU has not shown that it had no control over payment of the bill when it was misplaced between departments. The decision to impose penalties is a factual question which will not be disturbed on appeal in the absence of manifest error. LIGA/Mortem Risk Management v. Franks, 99-0670, p. 6 (La.App. 1 Cir. 6/23/00), 768 So.2d 622, 626, writ denied, 2000-2201 (La.10/13/00), 771 So.2d 652.[3] These penal statutes are to be strictly construed. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46. Thus, we conclude that Mr. Champagne is entitled to an award of penalties and attorney fees as provided for in La. R.S. 23:1201 and find no manifest error in the award.
Finally, Mr. Champagne's answer to appeal seeks additional attorney fees for the time spent defending this appeal and cites Gallien v. Winn-Dixie, 96-832 (La.App. 3 Cir. 12/11/96), 685 So.2d 531, which provides that workers' compensation claimants are entitled to increased attorney fees to reflect additional time and effort incurred in defending an employer's unsuccessful appeal. Mr. Champagne also complains that the $500 awarded by the WCJ was inadequate for the time counsel spent on the file and requests an increase.
We do not find that the WCJ was manifestly erroneous in the amount of attorneys fees awarded and deny Mr. Champagne's request to increase the award. The WCJ clearly read all of the depositions and pleadings and heard all of the testimony; she was in the best position to judge the amount of work done by claimant's counsel prior to setting the award. Thus, the $500.00 awarded by the WCJ was not manifestly erroneous.
Generally, however, an increase in attorney fees should be awarded when a party who was awarded attorney fees in the trial court is forced to and successfully defends an appeal. Bergeron v. Watkins, 98-0717, p. 10 (La.App. 1 Cir. 3/2/99), 731 So.2d 399, 405. An increase in attorney fees is awarded on appeal when the defendant appeals, obtains no relief and the appeal necessitated more work on the part of the claimant's attorney, provided that the claimant requests such an increase. McClendon v. Keith Hutchinson Logging, 96-2373, p. 13 (La.App. 1 Cir. 11/7/97), 702 So.2d 1164, 1173. After a review of the record of the work done on appeal by counsel for Mr. Champagne, we find that an additional award of $1,000 for attorney fees is reasonable. We therefore order, adjudge and decree that Mr. Champagne be awarded an additional $1,000 as attorney fees for successfully defending this appeal.

*1067 CONCLUSION

For the forgoing reasons, the Office of Workers' Compensation judgment is affirmed. We award additional attorney fees of $1,000 to Mr. Champagne's counsel. Costs are assessed against appellants.
AFFIRMED, ADDITIONAL ATTORNEY FEES AWARDED.
FITZSIMMONS, J., dissents in part, and assigns reasons.
FITZSIMMONS, Judge, dissenting in part, with reasons.
I respectfully dissent. The employee should be held responsible for the consequences of his decision to work in direct violation of his doctor's orders and restriction. The employee could have remained at LSU and worked within the restrictions. Instead, he chose to take a job that required heavy lifting, which significantly exacerbated the neck injury. The injury at LSU may have aggravated a pre-existing condition, but I do not believe that it created the disability that has resulted in the need for medical benefits.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] "When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person other than those persons against whom the said employee's rights and remedies are limited in La. R.S. 23:1032, a legal liability to pay damages in respect thereto ...."
[3] This Circuit has stated a test for determining whether a claim is reasonably controverted: "The analysis for determining whether an employee's compensation claim has been reasonably controverted is: [G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case." LIGA/Mortem Risk Management v. Franks, 99-0670, at p. 6, 768 So.2d at 626.