GAIDRY, J.
|Jn this workers’ compensation case, the plaintiff appeals a trial court judgment denying her claim for benefits and for penalties and attorney fees. We affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Geraldine Carter, was allegedly injured in the course and scope of her employment with defendant, Lakeview Regional Medical Center (“Lakeview”), on January 16, 2002. Carter had been working for Lakeview as a nuclear medicine technologist since 1995. Her duties, which were often physical in nature, included lifting and moving supplies, machinery, and patients. She claims that on the morning[1] of January 16, while lifting a container of isotopes weighing between twenty and twenty-five pounds off of the floor and placing it on the counter, she experienced a sharp pain on the right side, lumbar region of her back, after which the muscles “went into spasm causing more pain.” The accident was unwitnessed. Carter reported the injury later that same day to Julius Aldano, the director of radiology, and an accident report was completed. She also claims to have reported the accident to two co-workers, Kevin Samrow and Denise Barrara. Carter continued working that day and then saw her treating *688 physician, Dr. Craig Parker, for a previously-scheduled appointment that afternoon. Carter was put on light duty by Dr. Parker, but she quit her job on February 4, 2002, claiming she was no longer able to work at all due to her injury.
Carter admitted to a long history of both work-related and non-work-related back injuries dating back to 1982, including a herniated L5-S1 dish, |3which was not repaired. However, from the time she returned to work in April 2001 after taking a medical leave of absence due to a back injury, until her January 16, 2002 accident, she testified that she did not miss any work due to back pain and that she completed all requirements of her position. She claims that while she continued to have pain during this period, it did not prevent her from working until her January 2002 accident.
Lakeview initially denied Carter’s claim for workers’ compensation benefits, and on January 14, 2003, she filed a disputed claim for compensation. She later amended this claim to request attorney fees and penalties for the workers’ compensation insurer’s failure to pay the bills of her treating physician and other pharmaceutical charges which were directly related to her work injury. Approximately thirty days prior to the trial of this matter, Carter began receiving workers’ compensation checks back-dated from August 2003.
After a trial, the Workers’ Compensation Judge (“WCJ”) entered judgment against Carter, finding that she had failed to carry her burden of proving entitlement to compensation benefits. Carter filed this appeal, asserting that the trial court erred in finding that she failed to prove that an accident occurred, that she failed to prove she sustained an injury, and that sanctions in the form of penalties and attorney fees were not owed to plaintiff for Lakeview’s failure to pay benefits.
DISCUSSION
In a workers’ compensation case, as in other cases, we are bound by the manifest error rule and may not set aside the trial court’s findings of fact unless they are clearly wrong or manifestly erroneous. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. Even though an appellate court may feel its own evaluations and inferences are |4more reasonable than those of the factfin-der, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

Whether Benefits were Owed

Louisiana Revised Statutes 23:1021(1) defines “accident” as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an' injury which is more than simply a gradual deterioration or progressive degeneration.”
In certain events a worker’s testimony is sufficient to discharge the burden of proving an “accident,” provided that two elements are first satisfied: (1) no other evidence discredits .or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances surrounding the alleged incident. Smith v. Louisiana Welding Supply Co., Inc., 331 So.2d 606, 607 (La.App. 1 Cir.), writ denied, 337 So.2d 519 (La.1976).
Although Carter testified that she missed no work due to back pain between April 2001 and the date of her accident, she participated in a drug study for chronic back pain sufferers during this time, and *689 admitted that she was in pain during this time. When the drug study ended in December 2001, she began seeing Dr. Parker to help manage her pain during withdrawal from the drug. Two weeks prior to the alleged January 16 accident, Carter saw Dr. Craig Parker, who noted muscle spasms upon her physical examination of Carter. When asked about her pain level on January 14, two days prior to the accident at issue herein, she testified that it was “very rough. It was— I maintained probably a level of seven or eight and sometimes it went even, |fioh, my God, above a 10.” Carter saw Dr. Parker on January 16, after the accident, for a previously-scheduled appointment, at which he again noted muscle spasms, full range of motion — “but slower,” and released her to light-duty work. On January 23, one week after the accident, Dr. Parker noted that the muscle spasms were improved, she had full range of motion in her back, and he again released her to light-duty work. By February 1, Carter testified that she informed Lakeview that she could no longer work, even at light-duty, because there was no such thing as “light-duty” in her job. Dr. Parker saw her on February 1 and 4, but not for back-related problems. She obtained a “no-work slip” from Dr. Parker in March stating that she had not been able to work since February 4, 2002, and provided it to Mr. Aldana.
Carter testified that although the accident itself was unwitnessed, she told two coworkers about it, in addition to reporting it to her director. Only one of the coworkers she claims to have reported the accident to, Kevin Samrow, testified at trial. He stated that he could not remember Carter telling him she injured her back on January 16, but that over the time he had worked with her, she had always complained of back pain, and he frequently had to assist her with heavier patients.
Terri Bennett, the workers’ compensation claims adjuster, testified that Carter was released to light-duty work as of January 16, 2002 by Dr. Parker. Lakeview offered light-duty work to Carter, but on January 18, 2002, she advised Lakeview that she was unable to work light duty and that she was going to apply for disability. Carter denies that she was offered light-duty work, but admits that she told them she could not work light duty and would be applying for disability, although she testified that her recollection is that this conversation took place closer to January 25-28, 2002.
| (¡The WCJ did not find Dr. Parker to be credible and gave no weight to Dr. Parker’s opinions as to disability and causation. She noted that Dr. Parker is not board-certified and practices in internal medicine. The WCJ found Dr. Parker’s deposition testimony to be confusing and noted that at times Dr. Parker found his own notes and records confusing as well. Dr. Parker twice released Carter to light-duty work, and it was not until Carter asked him to send a letter to the workers’ compensation administrator stating that she was unable to work that he classified her as totally disabled. Dr. Parker’s records contain a note Carter brought to his office on April 6, 2002, asking Dr. Parker to send a letter to the workers’ compensation claims adjuster stating that she has been unable to work since February 4, 2002 due to degenerative disc and joint disease and severe chronic low back pain. Additionally, Dr. Parker’s records contain a phone message from Carter stating that she needed Dr. Parker to “recommend a [psychologist] in order for her & it has to be in her chart for W/C to pay.” The WCJ found that Carter’s attempts to influence Dr. Parker’s opinions called into question the accuracy and validity of his opinions.
*690 It is undisputed that Carter has a long-standing history of back problems. Such a preexisting condition does not automatically disqualify an employee from benefits; however, she must show that she was in good health before the accident, but commencing with the accident, symptoms of the disabling condition appeared. If such a showing is made, the employee’s disability is presumed to be the result of the work-related accident. Champagne v. State, Louisiana State University, 01-0242 (La.App. 1 Cir. 3/28/02), 819 So.2d 1059, 1063-1064.
The evidence presented at trial does not support Carter’s claim to have been in good health prior to the accident; therefore there is no presumption |7that her disability is the result of a work-related accident. Furthermore, her version of events, i.e., that she reported the accident to two coworkers, was not corroborated by the evidence presented at trial. We find no manifest error in the trial court’s finding that she failed to carry her burden of proving a compensable injury caused by a work-related accident.

Whether Penalties and Attorney Fees are Owed to Carter

Benefits due a workers’ compensation claimant must be paid within sixty days after the employer or insurer receives written notice thereof. La. R.S. 23:1201(E). Penalties and attorney fees may be awarded for failure to provide such payment timely, unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F).
As the court found that there were no benefits due Carter, and we have affirmed this finding, we find no error in the court’s failure to award penalties and attorney fees.
DECREE
The judgment of the trial court denying Geraldine Carter’s claim for workers’ compensation benefits is affirmed, and costs of this appeal are assessed to Carter.
AFFIRMED.

. In the Disputed Claim for Compensation, Carter states that the accident happened between eight o’clock a.m. and noon; however, her testimony at trial was that the accident occurred between seven and eight o'clock in the morning, before the director of radiology arrived.