McCLENDON, J.
|PThis is a disputed claim for workers’ compensation. For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL HISTORY
The relevant facts are essentially undisputed and stipulated to by the parties. On June 7, 2007, Joyce Carmena was employed as a certified nursing assistant (CNA) by Our Lady of the Lake Regional Medical Center d/b/a St. Anthony’s Home (OLOL), when she slipped and fell on a wet floor during the course and scope of her employment, causing injury to Ms. Carmena’s right knee. Ms. Carmena reported the accident and was referred to an orthopedist, Dr. Stephen Wilson. Ms. Carmena continued treatment with Dr. Wilson until April 2008, when she went to her own orthopedist, Dr. Ricardo J. Rodriguez. Dr. Rodriguez’s findings suggested an evolving sprain or tear with the patella ligament. Surgery was recommended, and on May 30, 2008, Dr. Rodriguez performed surgery on Ms. Carmena’s right knee, which included the reconstruction of the patella tendon using a hamstring graft.
OLOL paid Ms. Carmena temporary total disability (TTD) benefits, as well as all medical expenses associated with the right knee, from the date of the accident through February 8, 2009. At that time, she was released to restricted duty by Dr. Rodriguez, and Ms. Carmena returned to work in a light duty sedentary position for four hours a day. Accordingly, her TTD payments were converted to supplemental earnings benefits (SEB) on February 9, 2009.
The dispute in this matter arose later in 2009 when Ms. Carmena sought workers’ compensation coverage for symptoms that developed in her left knee. On June 5, 2009, Ms. Carmena made her first documented complaint regarding pain in her left knee, when she complained to Dr. Rodriguez of “pain in the left knee which has been going on for a few weeks.” Dr. Rodriguez also noted that Ms. Carmena did not remember any injury to that knee. Following an MRI, Dr. Rodriguez diagnosed Ms. Carmena with a “possible later *541 al meniscus tear” and recommended ar-throscopy surgery with partial lateral meniscectomy, which was | [.performed on October 7, 2009. Ms. Carmena returned to work in December 2009, for four hours a day on a light duty status. She returned to full duty employment in February 2010. OLOL denied any causal relationship between Ms. Carmena’s June 7, 2007 accident and her left knee medical treatment, which was paid by her own insurance.
Thereafter, on November 6, 2009, Ms. Carmena filed a disputed claim for compensation, seeking medical benefits for the surgery to her left knee, TTD benefits for the period of time she was unable to work because of the left knee complaints and surgery, and penalties and attorney fees for the failure to authorize the left knee surgery and for the wrongful termination of her SEB. Ms. Carmena asserted that she was receiving SEB for her right knee due to her part-time work restriction, and when surgery was performed on her left knee all indemnity benefits were wrongfully stopped even if OLOL did not believe that the left knee was work related.
The matter was tried on November 17, 2010.[1] The workers’ compensation judge (WCJ) ruled in favor of Ms. Carmena, finding that her left knee condition was related to the right knee injury of June 7, 2007. Judgment in accordance with the trial court’s ruling was signed on March 2, 2011, and St. Anthony’s suspensively appealed.
DISCUSSION
The workers’ compensation laws provide coverage to an employee for personal injury by accident arising out of and in the course of employment. LSA-R.S. 23:1031 A. An employee must prove the chain of causation required by the workers’ compensation statutory scheme. He must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. Magee v. Abek, Inc., 04-2554, p. 4 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 806, writ denied, 06-1876 (La.10/27/06), 939 So.2d 1287. Initially, a workers’ compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he [ ¿sustained an injury. Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. Id.
Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated, accelerated, or combined with the pre-existing condition to produce a compensable disability. He may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms. Magee, 04-2554 at pp. 4-5, 934 So.2d at 806-07.
A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied; (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances *542 following the alleged incident. Bruno v. Harbert Int’l, Inc., 593 So.2d 357, 361 (La.1992); Carter v. Lakeview Regional Medical Center, 04-1794, p. 4 (La.App. 1 Cir. 9/23/05), 923 So.2d 686, 688. Corroboration of the worker’s testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Bruno, 593 So.2d at 361. Whether a claimant has carried his burden of proof is a question of fact to be determined by the workers’ compensation judge. Harrison v. Baldwin Motors, 03-2682, p. 5 (La.App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied, 05-0249 (La.4/1/05), 897 So.2d 609.
An appellate court, in a workers’ compensation case, as in other cases, is bound by the manifest error rule and may not set aside the trial court’s findings |sof fact unless they are clearly wrong or manifestly erroneous. Carter, 04-1794 at p. 3, 923 So.2d at 688.
In the case sub judice, Ms. Carme-na testified at trial. She stated that, as a CNA, her job duties included bathing patients, taking vital signs, making beds, and, at times, required lifting. After her accident, Ms. Carmena testified that she continued to try to work full-time. She stated that until her surgery, she had to use her left leg more, putting her weight on her left leg because she could not put all of her weight on her right one because of the pain. Ms. Carmena stated that, after the surgery, her knee was in a brace, and she used a walker and then crutches for several months. Ms. Carmena also testified that when she first complained to Dr. Rodriguez of the pain in her left knee, he told her that it was related to the initial accident.
Dr. Rodriguez, an expert in the field of orthopedic surgery, testified by deposition. He testified that he first saw Ms. Carmena on April 4, 2008, after she had been treated for some time by Dr. Wilson and had received multiple cortisone injections. The April 10, 2008 MRI was suggestive of an evolving sprain or tear with the patella ligament, although there was no evidence of any displacement of the patella. Her progression of symptoms resulted in surgery on May 30, 2008, for a debridement of the left patella tendon and reconstruction of the patella tendon, using a hamstring graft. Dr. Rodriguez testified that recovery for this type of surgery was a full year. He stated that Ms. Carmena was on crutches for at least three months and that although Ms. Carmena was not tiny, she was not obese. He testified that she would certainly bear more weight on the left side while recovering. Dr. Rodriguez further stated that it was possible that Ms. Carmena’s right knee would always be a problem and was the reason for her permanent work restrictions. He also testified that Ms. Carmena’s left knee surgery could have affected and irritated her right knee for a little while.
With regard to Ms. Carmena’s left knee problems, Dr. Rodriguez testified that she probably had long-standing degenerative changes. It was Dr. Rodriguez’s opinion that the right knee did not make the left knee the way it |Rwas. Further, when asked whether he thought the right knee injury to Ms. Carmena caused her left knee to become symptomatic and more problematic because of the injury, Dr. Rodriguez responded that he did not. Asked again if he had seen situations where overcompensation to one body part lead to other problems, Dr. Rodriguez stated, “Certainly, it can in certain situations, but again in Joyce’s case, I don’t think it did.”
On appeal, OLOL argues that the WCJ erred in concluding that Ms. Carmena carried her burden of proof based solely on her own uncorroborated testimony. OLOL further contends that the WCJ le- *543 gaily erred when it applied the presumption of causation to this matter.
In oral reasons, the WCJ stated the following, in pertinent part:
The issue before the Court is whether or not the left knee condition is compen-sable and related to the original accident of June 7, 2007.
The Court is of the opinion that it is.
The Court makes a finding of fact that the left knee condition was — a degenerative arthritic condition was aggravated by the two years of excessive weight-bearing that was required of the left knee to compensate for the right knee injury that occurred on June 7, 2007.
[[Image here]]
So the Court finds that she has met her burden of proving that it is related. The Court certainly takes note of the fact that Dr. Rodriguez does not relate it, but this is a legal concept not a medical concept, the finding of causation, and the Court finds that Mrs. Carmena has met her burden of proving that it was caused by the original accident of June 7, 2007. But for the accident, the Court has no reason to believe that Mrs. Carmena would have sustained any tear to her left knee.
The conclusion of the WCJ was based entirely on the testimony of Ms. Carmena, whom the WCJ found to be very credible. However, Ms. Carmena’s own treating physician could not relate her left knee injury to the work-related accident. Moreover, Ms. Carmena offered no medical opinion testimony. In the only medical opinion offered in this matter, by OLOL, Dr. Rodriguez stated that the left knee did not become symptomatic because of the right knee injury. Additionally, the presumption of causation is inapplicable to the facts of this case |7as Ms. Carmena’s left-knee symptoms did not commence with the June 7, 2007 accident and by all accounts did not appear for almost two years in May 2009. Consequently, Ms. Carmena failed to satisfy her burden of proving by a preponderance of evidence that the June 7, 2007 work-related accident caused her left knee injury. The WCJ was clearly wrong to conclude otherwise.
CONCLUSION
For the foregoing reasons, the March 2, 2011 judgment of the WCJ finding that Joyce Carmena’s left knee condition is related to the accidental right knee injury sustained on June 7, 2007, is reversed. Costs of this appeal shall be split equally between Joyce Carmena and Our Lady of the Lake Regional Medical Center d/b/a St. Anthony’s Home.
REVERSED.
PETTIGREW, J., concurs.
CARTER, C.J., dissents for reasons assigned by Judge WELCH.
WELCH, J., dissents and assigns reasons.

. The request for penalties and attorney fees was abandoned at trial.