GUIDRY, J.
| «Claimant, Betty Damron, appeals a judgment of the Office of Workers’ Compensation (OWC), asserting that the OWC judge erred in finding that the claimant’s disability was not related to the claimant’s workplace accident. Finding the OWC judge’s conclusions not to be clearly wrong, we affirm.
FACTS AND PROCEDURAL HISTORY
Cannata’s Supermarket, Inc. employed Ms. Damron to work as a shopper, which duties required her to gather and box up various grocery items needed on offshore boats, rigs, and platforms. On February 27, 2012, while traversing a parking lot to re-enter her workplace after completing her lunch break, Ms. Damron, who was 68 years old at the time, tripped and fell on her left side. After being assisted up from her fallen position, Ms. Damron proceeded back into her workplace and clocked in. *708 Ms. Damron’s job duties required a lot of walking, and because the pain in her left hip was radiating to her back the more she walked, she reported the accident to her supervisors, who, in turn, sent her to Dr. Kirk A. Dantin to receive medical treatment.[1]
Dr. Dantin, a general practice physician, initially treated Ms. Damron with medication and released her to return to work on a light-duty status of no heavy lifting. When Ms. Damron still complained of increasing pain in follow-up visits, Dr. Dan-tin further modified her light-duty work status to limit walking to four hours and later 2-3 hours per day. Dr. Dantin also submitted a request to |shave a MRI performed on Ms. Damron; however, the request was denied because Ms. Damron had not received any conservative care, such as a course of physical therapy. Thereafter, Ms. Damron commenced a regimen of physical therapy treatment.[2]
On May 21, 2012, Ms. Damron was admitted to Terrebonne General Medical Center with complaints of headaches and vomiting. She was diagnosed with pneu-mococcal meningitis and remained hospitalized for that condition until June 8, 2012. While in the hospital, Ms. Damron suffered two falls that both occurred on June 1, 2012. The first fall occurred when an aide attempted to help her stand m her hospital room. The second fall occurred in an effort to secure x-rays of Ms. Damron following the first fall. According to Ms. Damron, a man attempted to put her on a table for the x-ray to be performed, but he did not place her far enough onto the table, which allowed her to slip off the table and fall, hitting her tailbone on a wheelchair. Following her release from the hospital, Ms. Damron did not return to work.
On September 23, 2012, Ms. Damron filed a disputed claim for compensation against Cannata’s,[3] indicating the issues in dispute to be the failure to pay wage benefits, the failure to authorize the MRI requested by Dr. Dantin, the failure to allow her to select her choice of physician, as well as a determination of her disability status. In answer to Ms. Damron’s disputed claim, Cannata’s denied that Ms. Damron sustained an injury resulting in a loss of earning capacity, and it further asserted that Ms. Damron’s two falls at Terrebonne General Medical Center on June 1, 2012, wa's an intervening and |4superceding cause of “any and all” disability alleged by Ms. Damron in her disputed claim.
In conjunction with its answer, Canna-ta’s filed a dilatory exception raising the *709 objection of prematurity to Ms. Damron’s claim regarding the MRI based on La. R.S. 23:1314(D).[4] Following a hearing on the dilatory exception, the OWC judge sustained the exception, dismissed Ms. Dam-ron’s MRJ claim and corresponding request for penalties and attorney fees based on the denial of the MRJ, and ordered that the MRJ claim and related requests .for penalties and attorney fees be stricken from her disputed claim form in a judgment signed May 22, 2013.
Prior to hearing, the parties submitted the matter to mediation, which was not successful; thus, the matter proceeded to a hearing on the merits. The only persons to testify at trial were Ms. Damron, on her own behalf, and Ms. Owens and Lawanda Harris, the workers’ compensation claims adjuster, on behalf of Cannata’s. Several exhibits were introduced into evidence, including Ms. Damron’s medical records and her work records with Cannata’s and the deposition testimony of Ms. Damron and Dr. William Kinnard, a board certified orthopedic surgeon. After taking the matter under advisement and considering all of the evidence submitted, the OWC judge concluded that: (1) Ms. Damron’s current back condition was not related to her February 27, 2012 workplace accident; (2) Ms. Damron was not permanently and totally disabled as a result of the February 27, 2012 workplace accident; and (3) Ms. Damron was able to continue working after the February 27, 2012 workplace accident and would have been able to continue working with accommodations had it not been for the intervening meningitis and two falls at Terrebonne General Medical Center. |RHence, the OWC judge found that Ms. Damron was not entitled to past or future indemnity benefits based on the February 27, 2012 workplace accident. It is from this judgment that Ms. Damron now appeals.
DISCUSSION
In her sole assignment of error, Ms. Damron contends that the OWC judge erred in not finding that her falls at Terre-bonne General Medical Center were a “development” of her workplace injury such that her disability is attributable to her initial workplace accident.
An employee must prove the chain of causation required by the workers’ compensation statutory scheme. She must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. Carmena v. St. Anthony’s Home, 11-1181, p. 3 (La.App. 1st Cir.5/2/12), 92 So.3d 539, 541; see also La. R.S. 23:1121. A claimant must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. Carmena, 11-1181 at p. 4, 92 So.3d at 541. Whether a claimant has carried her burden of proof is a question of fact to be determined by the OWC judge. An appellate court, in a workers’ compensation case, as in other cases, is bound by the manifest error rule and may not set aside the findings of fact unless they are clearly wrong or manifestly erroneous. Carmena, 11-1181 at pp. 4-5, 92 So.3d at 542.
Based on the evidence presented in the record before us, we cannot say that the OWC judge clearly erred in finding that Ms. Damron was not disabled as a result *710 of the February 27, 2012 workplace accident. All of the evidence in the record before us shows that Ms. Damron continued to work fulltime, with restrictions, following her workplace accident, and only stopped working after | fiher hospitalization and falls at Terrebonne General Medical Center. Thus, she clearly was not disabled following the workplace accident. Nevertheless, relying primarily on the deposition testimony of Dr. Kinnard,[5] whom Ms. Damron first saw following her falls at Terrebonne General Medical Center, Ms. Damron contends that she is entitled to indemnity benefits because the falls at the hospital were merely an aggravation of the injury she initially sustained in Cannata’s parking lot.
 Under certain circumstances, an aggravation of an injury initially sustained at work is regarded as compensable, obligating the employer to continue paying compensation benefits, even though the aggravation develops away from the premises and not in the course and scope of the claimant’s employment. See Buxton v. Iowa Police Department, 09-0520, pp. 12-13 (La.10/20/09), 28 So.3d 275, 283-84. The key question is the relationship between the second injury and the initial, work-related injury. The courts have held that an accident occurring away from work is compensable, where the work-related injury has not healed at the time of the accident, and as such, rendered the employee susceptible to further aggravating injuries. Buxton, 09-0520 at p. 13, 23 So.3d at 284. In Louisiana, as in the majority of states, there is a requirement that the subsequent injury flow from the work-related injury and not be caused by' an intervening accident wholly unrelated to the work-related injury. Buxton, 09-0520 at p. 16, 23 So.3d at 286.
In Buxton, the court held that the subsequent injuries the claimant sustained when the vehicle he was driving collided with a cow were not caused by the earlier, work-related accident because there was no proof the workjrelated7 injury predisposed the claimant to the injuries sustained in the non-work-related accident or that medical treatment subsequent to the non-work-related accident was required because of the employment accident. Buxton, 09-0520 at p. 17, 23 So.3d at 286. In Stewart v. Hospitals Affiliates International Inc. of Baton Rouge, 404 So.2d 944 (La.1981), however, a case relied on by Ms. Damron, the court found that the claimant’s fall at home in her bathtub was caused by an earlier workplace accident in which she injured her back lifting a hospitalized patient. In that case, the claimant’s workplace accident had left her with a weakness in her left -leg and that weakness made her leg give away and caused her to fall in the tub. Stewart, 404 So.2d at 945.
In this case, Ms. Damron was hospitalized as a result of having contracted meningitis, which was completely unrelated to her workplace injury. Moreover, there is no proof in the record before us that Ms. Damron’s workplace injury predisposed her to the injury sustained in the non-work-related accident or that medical treatment subsequent to the non-work-related accident was required because of the employment accident. The falls that occurred at the hospital occurred during her treatment for meningitis and not as a result of her workplace accident.
*711 Dr. Kinnard testified that he assumed that both accidents contributed to her disability, because he found that Ms. Dam-ron’s workplace accident aggravated her preexisting degenerative condition, which was further aggravated by her falls at the hospital. This testimony alone, however, is insufficient to interdict the OWC judge’s factual conclusion that Ms. Damron was not disabled as a result of the February 27, 2012 workplace accident in light of all of the evidence presented in the record as a whole.
In particular, in his deposition, Dr. Kin-nard further observed that: (1) Ms. Dam-ron had complained to him of pain radiating down her legs and buttocks of 18which she never complained to Dr. Dantin following the workplace accident; (2) he had found that Ms. Damron had limited mobility at the time of his exam, but Dr. Dantin said she had a good range of motion following the workplace accident; and (3) Ms. Damron made complaints of predominantly left-sided pain to Dr. Dantin following the workplace accident, but complained of bilateral pain symptoms to Dr. Kinnard during his examination of her after the hospital falls.
At the hearing, Ms. Damron testified that the hospital falls made her existing pain worse; however, in her deposition, she testified that after the workplace accident, she only had pain in her hip, but physical therapy treatment would cause temporary pain in her back. As she explained, the physical therapy back pain “would go away. It wouldn’t last. It wasn’t like the hurt I had after the fall at the hospital.” Consequently, this evidence indicates that the hospital falls caused more than just a mere escalation or continuation of Ms. Damron’s workplace injury.
Thus, considering the applicable law and the evidence presented, we find no error in the OWC judge’s conclusion that the Ms. Damron’s hospital falls were the intervening and superceding cause of Ms. Dam-ron’s disability and not just a mere aggravation of the injury she initially sustained at work. The evidence presented was sufficient to show that an intervening accident, the hospital falls, caused Ms. Dam-ron’s disability and that the disability did not flow from her work-related injury. See Buxton, 09-0520 at p. 16, 23 So.3d at 286.
CONCLUSION
Therefore, considering the record before us and the applicable law, we affirm the judgment of the Office of Workers’ Compensation. All costs of this appeal are assessed to the claimant, Betty Damron.
AFFIRMED.

. There is conflicting testimony in the record as to when Ms. Damron began receiving medical treatment relative to the accident. Ms. Damron testified that she initially reported her injury to her supervisor, Lark Owens, on February 27, 2012, the date of the accident. She stated that Ms. Owens sent her to the doctor on that date after first instructing her to report the accident to one of the store managers. Ms. Damron explained that assistant store manager Tony Chouest filled out an accident report, but when that report could not be located, a second report was completed by Ms. Owens.
Ms. Owens, on the other hand, testified that she sent Ms. Damron to receive medical treatment on the date she completed the second accident report, which was in March 2012. She said that was the first time Ms. Damron requested medical treatment relative to the accident. Dr. Dantin’s medical records indicate that Ms. Damron was first seen by him on March 27, 2012.

. Ms. Damron completed five physical therapy visits on May 9, 15, 16, 18, and 21, 2012.

. In the disputed claim form, Ms. Damron listed Affiliated Marine Supply/Cannata’s Supermarket as her employer and Risk Management Resources as its workers' compensation insurer.

. That statute provides that ‘'[disputes over medical treatment pursuant to the medical treatment schedule shall be premature unless a decision of the medical director has been obtained in accordance with R.S. 23:1203.1(J).”

. Although Ms. Damron initially accepted Dr. Dantin, a general practitioner, as her treating physician, she later selected and began seeing Dr. Kinnard for her back condition. See La. R.S. 23:1121(B)(1). Dr. Kinnard’s deposition was introduced into evidence at the hearing in lieu of his live testimony.