906 So.2d 503 (2005)
Shirley Mae CARTER
v.
WILLIAMSON EYE CENTER.
No. 2004 CA 0527.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
*505 Cazeline H. Dixon, Baton Rouge, Counsel for Claimant/Appellant Shirley Mae Carter.
Lawrence B. Frieman, Metairie, Counsel for Defendant/Appellee Williamson Eye Center.
Before: PARRO, KUHN, and WELCH, JJ.
KUHN, J.
Claimant, Shirley Mae Carter, cut her finger while performing custodial duties for her employer, Williamson Eye Center. She ultimately filed a claim for workers' compensation disability benefits, urging that the trauma associated with this accident caused her to develop fibromyalgia. She maintains that the resulting pain of this condition has prevented her from performing her custodial duties. The Office of Workers' Compensation ("OWC") rendered judgment in favor of the Williamson Eye Center and dismissed Carter's claim. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND
On August 27, 1998, while Carter was dusting a desktop, she picked up a picture frame with her left hand. The glass separated from the frame and dropped on her right hand, cutting the back or dorsal side of her middle finger. The cut, which was less than one-half inch in length, was bandaged rather than stitched at a hospital emergency room. The next day, Carter's finger began bleeding again, and she returned to the hospital. Her finger was re-bandaged and put into a splint. About five days later, Carter saw Dr. Henry Dixon, her primary care physician. According to Carter, Dr. Dixon advised her to keep the splint on and refrain from working for another week.
Carter testified that when the splint was removed, she was unable to bend her middle finger unless it was manually pushed down. She sought medical treatment from another physician, Dr. Stan Mays, who referred her to Dr. Alan C. Farries, an orthopedist. Dr. Farries treated Carter from September through November of 1998. On September 18, 1998, Dr. Farries prescribed medications for swelling and pain and noted that Carter had long-standing bilateral carpal tunnel syndrome, for which Carter had previously undergone surgical release procedures on both hands. Dr. Farries also prescribed physical therapy and noted that Carter reported "pain well out of proportion to the description of the injury." When Carter returned on October 12, 1998, she reported carpal tunnel problems and pain in her neck and right arm. Upon Carter's last visit to Dr. Farries on November 16, 1998, he noted the following:
[Carter] is back in for evaluation of the right hand injury where she has a superficial laceration. In the meantime, she developed all these other symptoms. She has been evaluated by Dr. Joseph as well as Dr. Neil Smith. There may be some neurological problems with her although I am not really sure what Dr. Smith has in mind. I feel from an orthopedic standpoint, she is ready to go back to work and she is released from my care.[1]
*506 (Footnote added).
According to Carter, Dr. Farries referred her at that time to Dr. Hector Mena, a rheumatologist whom she had seen in 1997 for symptoms related to her carpel tunnel symptoms, because she was having pain throughout her body. When she saw Dr. Mena in December of 1998, he prescribed an anti-inflammatory drug and his progress notes indicate that Carter "may be developing rheumatoid arthritis and it may be a significant part of the problems with the carpal tunnel syndrome." When Carter saw Dr. Mena again in March of 1999, she complained of pain in her knees and elbows. She also reported pain in, and could not completely flex her finger that had been cut. Dr. Mena advised Carter to seek orthopedic treatment for this "trigger finger" problem and diagnosed osteoarthritis of the hands and knees.
At this time, Carter returned to Dr. Dixon, who referred her to a hand specialist, Dr. Darryl Peterson. Upon examining Carter on July 26, 1999, Dr. Peterson found no nerve damage to the finger resulting from the laceration, but found that the lining of the tendon in Carter's finger was inflamed, causing the "trigger finger." Dr. Peterson first administered injections to resolve the inflammation. After the injections proved unsuccessful, he performed a surgical release that completely resolved the problems with Carter's "trigger" finger.
However, according to Carter's testimony, she continued to hurt "from the top of [her] head to the top of [her] feet." On September 15, 1999, Carter sought treatment from another rheumatologist, Dr. Luis R. Espinoza. Carter reported being fatigued, having back and hip pain, and having difficulty walking. Based on Carter's medical history and a physical exam that revealed multiple tender points, Dr. Espinoza diagnosed fibromyalgia. He prescribed muscle relaxers and physical therapy.
Carter never returned to work following the August 1998 injury. During 1999, she filed a claim seeking compensation benefits for disability resulting from the injury to her right hand. Williamson Eye Center stipulated that Carter had cut her finger while in the course and scope of employment but disputed her assertions that the injury had caused any present work-related disability. The parties stipulated that Williamson Eye Center paid Carter her full wages from the date of her injury, August 27, 1998, through October 2, 1998. In dismissing Carter's claim for benefits, the OWC found that: 1) claimant had failed to prove by clear and convincing evidence that she was disabled from employment, and 2) claimant had failed to prove by a preponderance of the evidence that her fibromyalgia was related to her work-related accident. On appeal, Carter urges that the OWC erred in finding that her fibromyalgia was not related to her accident involving her finger and in finding that she was able to work.

II. ANALYSIS

A. Did the work accident cause claimant to develop fibromyalgia?
Carter maintains the work accident caused her to develop fibromyalgia and she *507 is unable to return to work because of the pain that has resulted from this condition.
A workers' compensation claimant must prove by a preponderance of the evidence that an employment accident occurred and that it had a causal relationship to the subsequent, disabling condition. Grant v. Assumption Parish School Bd., XXXX-XXXX, p. 3 (La.App. 1st Cir.3/28/02), 813 So.2d 622, 624. If the evidence leaves the probabilities evenly balanced, the claimant has failed to carry his burden of proof. Likewise, claimant's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Id. Where there is no causal relationship between the compensable injury and the subsequent event, the employer has no liability for compensation beyond the disability produced by the work-related accident. Sandidge v. Sandidge, 2000-2157, p. 3 (La.App. 1st Cir.12/28/01), 804 So.2d 912, 914.
To support her claim regarding the cause of her fibromyalgia, claimant offered Dr. Espinoza's deposition testimony. He described fibromyalgia as a common rheumatic disease with symptoms of diffuse aches and pains, fatigue, and sleep abnormalities. He testified that Carter's fibromyalgia was triggered by a combination of both the psychological and physical stress caused by the trauma that Carter suffered when she cut her finger. In his opinion, trauma was a common, triggering event for fibromyalgia. He acknowledged, however, that the concept of trauma as a triggering event was controversial. Dr. Espinoza further admitted that his diagnosis was based on the information that Carter had provided him; she neither told him about her carpal tunnel problems nor that she had undergone a release surgery during 1997, prior to her work-related accident. Dr. Espinoza also stated that he did not consider himself to be Carter's treating physician because he had not seen her on a regular basis.
To controvert the testimony submitted by Carter, Williamson Eye Center offered the testimony of another rheumatologist, Dr. Reginald Sanders, who examined Carter during the year 2000. After examining Carter, reviewing her medical records, and considering her history, Dr. Sanders diagnosed that her chronic pain was most likely due to osteoarthritis rather than fibromyalgia. He explained that Carter described her pain as being present constantly, which was incompatible with a fibromyalgia diagnosis; he found Carter's symptoms to be consistent with osteoarthritis. Dr. Sanders testified that although he did not believe Carter had fibromyalgia, if he assumed that she did have it, he would relate it to her osteoarthritis. He described fibromyalgia as a controversial, chronic pain syndrome that is based on a subjective diagnosis. Dr. Sanders testified, however, that there was no scientific evidence to support Dr. Espinoza's proposition that trauma or stress was a triggering event for fibromyalgia. Further, he stated that he knew of no medical literature to support Dr. Espinoza's opinion that a small cut on a finger could cause fibromyalgia. Dr. Sanders also stated that upon reviewing all of Carter's medical records, he found that Carter had first described pain symptoms that could be viewed as fibromyalgia when she saw Dr. Dixon in April of 1998, prior to her work-related accident.
The factual findings of the OWC are subject to the manifest error standard of appellate review. Edwards v. Sawyer Indus. Plastics, Inc., 99-2676, p. 9 (La.6/30/00), 765 So.2d 328, 332. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion *508 was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 882 (La.1993).
Based on the record before us, we recognize that Dr. Espinoza's testimony alone could have supported an OWC determination that the work-related accident caused Carter to develop fibromyalgia. But Dr. Sanders' testimony presented the OWC with another view on this issue  that there was no medical literature to support Dr. Espinoza's conclusion that a small cut to the finger could trigger fibromyalgia. Accordingly, based on the record, we cannot find that the OWC was manifestly erroneous in finding that Carter failed to prove by a preponderance of the evidence that her fibromyalgia was related to her work-related accident.[2]

B. Did the injury to claimant's finger result in other disability?
Carter's only argument addressing disability is that there is no medical evidence in the record establishing she was ever released to return to her job. She primarily claims she could not return to work because she suffered from pain. This pain allegedly resulted from the fibromyalgia. Since we have concluded that the OWC was not manifestly erroneous in concluding that Carter's fibromyalgia was not related to her finger injury, Carter is not entitled to benefits for any disability resulting from the fibromyalgia. We consider, however, whether the evidence otherwise establishes that claimant was disabled due to her finger injury.
A claimant that seeks temporary total or permanent total disability benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the work. La. R.S. 23:1221(1)(c) and (2)(c). The "clear and convincing" standard is an intermediate standard falling somewhere between the ordinary civil "preponderance of the evidence" standard and the "beyond a reasonable doubt" standard of a criminal prosecution. Comeaux v. City of Crowley, XXXX-XXXX, pp. 8-9 (La.7/3/01), 793 So.2d 1215, 1220. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Boquet v. Tetra Technologies, Inc., XXXX-XXXX, p. 3 (La.App. 1st Cir.2/14/03), 847 So.2d 1, 3.
Examining all of the evidence, we find that Carter failed to establish by clear and convincing evidence that the cut to her finger resulted in her inability to perform her job duties after October 2, 1998, the date that Williamson Eye Center terminated her wages. Carter testified that she could not perform her custodial duties while her finger was in the splint. Her testimony, however, establishes that her finger was in a splint for only two and a half weeks after it was injured. Williamson Eye Center paid Carter her wages beyond this period of time.
Further, Carter's testimony did not clearly establish that her "trigger finger" *509 rather than the pain associated with the fibromyalgia caused her to be unable to perform her job duties. Thus, she did not establish she was entitled to disability benefits after October 2, 1998. Moreover, if any disability resulted from that condition, the OWC apparently concluded it was not attributable to her finger cut. Although it appears logical that the finger cut possibly caused the "trigger finger," the medical evidence supports a different conclusion. Dr. Farries and Dr. Peterson both found that Carter's "trigger finger" was more likely caused by her inflammatory problems (either rheumatoid arthritis or fibromyalgia) rather than the laceration to her finger.[3] Thus, based on this evidence, we cannot find that the OWC was manifestly erroneous in concluding that: 1) the cut did not cause the "trigger finger" and any resulting disability was not attributable to the August 27, 1998 work accident, or 2) the "trigger finger" did not disable Carter from performing her work duties.

III. CONCLUSION
For these reasons, we affirm the OWC's ruling, which dismissed Carter's claim for workers' compensation benefits. We assess costs of this appeal to Carter.
AFFIRMED.
NOTES
[1] Dr. Smith, a neurologist, found no neurological problems when he examined Carter on October 23, 1998. Dr. Smith also noted, "On examination of [Carter's] right hand, there was no weakness and she closed her hand well. There was a push pull phenomenon when she attempts to close the index and middle finger indicating that her grip is probably good, but she doesn't want you to know that." In a November 10, 1998 progress note, Dr. Joseph primarily focused on Carter's carpal tunnel problems and noted that Carter might benefit from an assessment by a rheumatologist.
[2] To support her claim, Carter also submitted a decision by the United States Social Security Administration, dated June 14, 2000, which found that Carter has post-traumatic fibromyalgia and is disabled, within the meaning of the "Social Security Act." We note that the decision of the Social Security Administration was not necessarily based on the same evidence considered by the OWC. Furthermore, the entitlement to social security benefits is based on different legal bases than the entitlement to workers' compensation benefits.
[3] Disability is presumed when a claimant is in good health before the accident, and the symptoms of the disability appear after the accident and continue to manifest themselves. Kemp v. East Baton Rouge City Parish, 2002-2083, p. 4 (La.App. 1st Cir.6/27/03), 858 So.2d 537, 541. Assuming that Carter was entitled to this presumption, we find the medical evidence sufficiently rebutted a causal connection between any disability that resulted from the "trigger finger" and the work-related accident.