934 So.2d 800 (2006)
Dawn MAGEE
v.
ABEK, INC.
No. 2004 CA 2554.
Court of Appeal of Louisiana, First Circuit.
April 28, 2006.
Rehearing Denied June 30, 2006.
*805 William R. Mustian, III, Stanga & Mustian, Metairie, for Plaintiff-Appellant/Appellee Dawn Magee.
Tammy M. Nick, Slidell, for Defendant-Appellee/Appellant ABEK, Inc.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
In this workers' compensation case, the claimant, Dawn Magee,[1] appeals a judgment that ordered her former employer, Abek, Inc. (Abek), to pay medical benefits for a work-related injury to her left ulnar nerve, but denied benefits for treatment of back and neck injuries, based on the workers' compensation court's finding that these were not caused by the accident at work. She also appeals the denial of her claims for temporary total disability benefits, supplemental earnings benefits, penalties, attorney fees, and court costs, including the fees of her medical expert. Abek also appealed, seeking the forfeiture of all past, present, and future benefits and restitution on the grounds that Magee willfully made false statements for the purpose of obtaining workers' compensation benefits.[2] We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Dawn Magee went to work during the summer of 2002 as a receptionist at Abek, a real estate business owned by Andrew Kobeszko, his wife, Elizabeth, and their children. While at work on January 9, 2003, Magee went into the kitchen, slipped, and fell. Although Abek did not have workers' compensation insurance, the company began paying Magee's medical bills and continued her usual paycheck through the end of May, although she was not working during that period. Questions arose concerning her disability status and the necessity for certain treatments, and in March 2003, Magee filed a disputed claim for workers' compensation benefits. Abek answered, denying all allegations, and later reconvened for restitution and forfeiture of all her benefits.
After a two-day trial in March 2004, the court took the matter under advisement and accepted post-trial memoranda from the parties. A judgment was signed on April 27, 2004, in which the court found Magee had suffered a work-related accident on January 9, 2003, injuring her left ulnar nerve. The court ordered Abek to pay all reasonable and necessary past, present, and future medical treatments for the ulnar nerve injury, subject to the workers' compensation fee schedule. Finding that Magee's neck and back conditions were not caused by the accident at work, the court denied any claims for relief related to those complaints and further denied Magee's claims for temporary total disability benefits, supplemental earnings benefits, penalties, attorney fees, and court costs. Abek's claims for forfeiture of benefits and restitution were also denied. Both parties filed motions for new trial, which were denied. However, the court *806 signed an amended judgment on July 7, 2004, clarifying its intentions regarding medical benefits for the ulnar nerve injury. The amended judgment stated all past treatments by Dr. Dietze for that injury were reasonable and necessary, and the recommended surgery  a left ulnar nerve exploration and neurolysis with transposition  was also reasonable and necessary.[3] Both parties appealed these judgments.

APPLICABLE LAW

Standard of Review
In a workers' compensation case, as in other cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dep't of Corr., 93-1305 (La.2/28/94), 633 So.2d 129, 132. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of the trier of fact, for only the fact finder can be aware of the variations in demeanor and tone that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.

Burden of Proof/Causation/Credibility
The workers' compensation laws provide coverage to an employee for personal injury by accident arising out of and in the course of employment. LSA-R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme. He must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. DeGruy v. Pala, Inc., 525 So.2d 1124, 1130 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988). Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Holiday v. Borden Chem., 508 So.2d 1381, 1383 (La.1987). Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979). Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. DeGruy, 525 So.2d at 1132.
Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated, accelerated, or combined with the pre-existing *807 condition to produce a compensable disability. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691. He may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320, 324-25 (La.1985).
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 361 (La. 1992). Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Id. Barring circumstances that cast suspicion on the reliability of the worker's uncontradicted testimony, the fact finder should accept the testimony as true when determining whether the worker has discharged his burden. Brown v. Kwok Wong, 01-2525 (La.App. 1st Cir.12/20/02), 836 So.2d 315, 319. If the evidence leaves the probabilities of causation equally balanced, the worker has failed to carry his or her burden of proof. Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. Harrison v. Baldwin Motors, 03-2682 (La.App. 1st Cir.11/3/04), 889 So.2d 313, 316, writ denied, 05-0249 (La.4/1/05), 897 So.2d 609.
A claimant's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician. Peters v. Harmsen, 03-1296 (La.App. 1st Cir.4/2/04), 879 So.2d 157, 162. Thus, in many cases, the credibility of the history given by the claimant to his physicians becomes as important as the medical opinions based in part on that history. See Cheatum v. Wackenhut Corp., 346 So.2d 888, 890 (La.App. 4th Cir.1977). The rule that questions of credibility are for the trier of fact applies also to the evaluation of expert testimony. Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La. 1990).

Indemnity Benefits
An employee seeking to recover indemnity benefits for a temporary or permanent total disability must prove by clear and convincing evidence that he is physically unable to engage in any gainful occupation, whether or not the same type of work he was engaged in at the time of the injury. LSA-R.S. 23:1221(1)(c) and (2)(c). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Carter v. Williamson Eye Center, 04-0527 (La.App. 1st Cir.2/11/05), 906 So.2d 503, 508. An employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. LSA-R.S. 23:1221(3)(a). The employee bears the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. LaFleur v. Alec Elec., 04-0003 (La.App. 1st Cir.12/30/04), 898 So.2d 474, 478, writs denied, 05-0276 *808 and 0277 (La.4/8/05), 898 So.2d 1287 and 1288.

Statutory Penalties
Pursuant to the statutes in effect at the time of this injury, penalties and attorney fees are recoverable under LSA-R.S. 23:1201(F) if the employer or insurer failed to commence payments of benefits timely, unless the claim is reasonably controverted.[4] Attorney fees, but not penalties, were recoverable under LSA-R.S. 23:1201.2 if the employer or insurer arbitrarily and capriciously discontinued payment of benefits due.[5]Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 45. The claimant is not entitled to such a recovery where there exists a rational basis for an employer and/or its insurer to deny or discontinue benefits. Connor v. Frees Constr. Co., Inc., 525 So.2d 241, 244 (La.App. 1st Cir.), writ denied, 532 So.2d 111 (La.1988). Whether the employer's refusal to pay benefits warrants the imposition of penalties and attorney fees is a factual question that will not be disturbed on review in the absence of manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989).
Louisiana Revised Statute 23:1208 makes it unlawful for any person to willfully make a false statement or representation for the purpose of obtaining or defeating any workers' compensation benefit or payment. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining or defeating benefits. Resweber v. Haroil Constr. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 9. The requirements for forfeiture of benefits under Section 1208 are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber, 660 So.2d at 14. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. An inadvertent and inconsequential false statement would not result in forfeiture of benefits. Newman v. Richard Price Constr., 02-0995 (La.App. 1st Cir.8/8/03), 859 So.2d 136, 141. The forfeiture of benefits under Section 1208 is prospective only, from the time the misrepresentation occurs, rather than from the date of the accident. Leonard v. James Indus. Constructors, 03-0040 (La. App. 1st Cir.5/14/04), 879 So.2d 724, 730 (en banc), writ denied, 04-1447 (La.9/24/04), 882 So.2d 1139. The issue of whether an employee forfeited workers' compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Davis v. AMS Tube Corp., 02-2427 (La.App. 1st Cir.12/31/03), 868 So.2d 141, 146, writ denied, 04-0286 (La.3/26/04), 871 So.2d 354.

ANALYSIS
As noted by the workers' compensation judge in oral reasons for judgment, "[t]his was a bitter contest." As a result, both parties have appealed, and both have set out assignments of error. *809 Keeping in mind the appropriate standard of review, we examine these alleged errors, beginning with Magee's claims. Although not the first assignment of error, the one which undoubtedly influenced the trial court's decision in this case and will similarly impact this court's review is the claim that the trial court unfairly and improperly assessed Magee's credibility. Therefore, we address this assignment first. In oral reasons, the trial court stated:
Records reveal Dawn Magee has used the name Dawn Grass on several occasions since 1997 and prior to her marriage. It is concluded that this was done methodically for the purpose of creating confusion, deceit, and for monetary gain.
There is no dispute that Magee used the surname Grass years before her marriage and claimed to be married to George Grass in order to qualify for spousal benefits on his employer's health insurance policy covering employees and their families. She admitted having done so, and further acknowledged that she and Grass are repaying approximately $30,000 in health insurance benefits paid on her behalf as a result of this falsehood. While that misrepresentation had no direct bearing on Magee's claim for benefits in this case, it is relevant for the court's assessment of her overall credibility and character. The court also observed:
It is further concluded that Dawn Magee withheld numerous and significant injuries and treatments with a barrage of ailments with multiple physicians. Dawn Magee's lack of credibility is significant. When treating with physicians, only she can provide a history of her symptoms. Lack of veracity with respect to her prior events and complaints diminish the veracity of her complaints to her physicians.
The record is replete with such omissions and inconsistencies. As one example, on an orthopedist's new patient questionnaire that she completed in April 2003, she denied a previous history of injury or treatment to her back or neck of any kind before this accident. However, in 1998 and again in 2001, MRI's of the cervical and lumbar spine were obtained because of her complaints of pain in both of those areas and radiating pain into her extremities. Over the years, as Magee sought treatment from various physicians for numerous ailments, the histories provided to those doctors were often incomplete. Magee contended at trial and in briefs to this court that these errors were simply lapses of memory or innocent omissions or mistakes, and that may be the case. However, it is precisely with respect to such evaluations of credibility that this court must defer to the trial court, who observed the witness during testimony. When factual findings are based on determinations regarding the credibility of a witness, the manifest error standard demands great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone that bear so heavily on the listener's understanding and belief in what is said. Harrison v. Baldwin Motors, 03-2682 (La.App. 1st Cir.11/3/04), 889 So.2d 313, 315, writ denied, 05-0249 (La.4/1/05), 897 So.2d 609. Several of the doctors who examined Magee after the accident made comments such as "psychological overlay" or "symptom magnification," as well as noting that Magee's pain complaints were inconsistent, depending on whether she was aware that a test was being conducted or whether a response was elicited while she was unaware that the doctor was performing a test. We find there were sufficient inconsistencies and unexplained omissions in the evidence for the trial court to conclude *810 that Magee's testimony was tainted by a lack of credibility.
With this credibility evaluation in the background, we examine two related assignments of error: that the trial court erred in failing to apply the presumption of causation to Magee's neck and back injuries and in finding that her neck and back injuries were not related to the January 9, 2003 accident at work. The presumption could help Magee establish causation if her symptoms of back and neck pain had not been manifested before the accident, but commenced with the accident and manifested themselves thereafter, and if either medical or circumstantial evidence indicated a reasonable possibility of causal connection between the accident and the onset of those symptoms. See Walton, 475 So.2d at 324-25. In this case, Magee contends she had no pre-existing neck or back problems other than occasional lower back pain caused by kidney or bladder infections, but since the accident, has been diagnosed with a herniated cervical disc and a bulging lumbar disc. She claims the symptoms related to her neck and lower back commenced with the accident. However, medical records indicate that over the years, she had complained about neck and back pain to various physicians. Two years before the accident, Magee completed a health survey for Dr. Christy Graves, a family practice doctor, in which she noted, among other things, pain or stiffness in the neck and recurring or severe backache. Moreover, in 1998, MRI's of the cervical spine and lumbar spine were obtained, and in 2001, MRI's of the head and neck were obtained, in both cases due to complaints of pain in these areas and radiating pain to her extremities. Therefore, because she had symptoms of back and neck pain before the accident, the trial court's causation analysis could not be assisted by the presumption, and we find no error in the court's failure to apply the presumption of causation in this case.
With reference to the factual finding that the lower back problems were not caused by the accident, the medical records are quite consistent. Various tests before and after the accident show a bulging disc in the lumbar area that was not causing compression of the spinal cord or radiculopathy. Despite Magee's continuing complaints concerning the lower back and radiating pain, a nerve conduction study in April 2003 revealed no evidence of radiculopathy or neuropathy in the left leg. An MRI of the lumbar spine that same month indicated a mild central broad-based disc bulge at the L4-5 level with no evidence of cord compression or focal disc herniation or severe spinal stenosis. Dr. Eric S. Madore, who treated her for her complaints of neck and back pain, noted in an August 2003 letter that despite negative test findings on the MRI and nerve conduction study, Magee continued to complain of worsening muscle weakness and an inability to control bowel and bladder functions. He referred her to a neurosurgeon for evaluation of these symptoms. According to Dr. Donald D. Dietze, Jr., the neurosurgeon who examined her, there was no lumbar spinal column disease causing her bowel and bladder incontinence. Basically, none of the doctors who tested Magee after the accident found anything in the lumbar tests that was significantly different from the earlier test results and complaints concerning that area. We conclude, therefore, that the trial court's factual finding that Magee's lower back problems were not caused by the accident is supported by the evidence and not manifestly erroneous.
With respect to the cervical spine, however, an MRI ordered by Dr. Dietze in June 2004 did reveal a cervical disc herniation that was more extensive than the *811 bulging condition noted on the earlier MRIs of that area. With reference to that condition, Dr. Dietze said in his deposition that "certainly, a fall can cause it," and concluded from Magee's history that the fall probably did cause the cervical problems. However, Dr. Dietze also acknowledged that the symptoms from the ulnar nerve injury, which could only have been caused by the fall, could mimic the symptoms of a herniated cervical disc. Additionally, although Magee did not give Dr. Dietze a detailed description of her medical history, the medical records from other doctors who treated her before the fall showed earlier symptoms of weakness and numbness in her left extremities. For example, these and other complaints during 2001 prompted Dr. Graves to get various tests to rule out multiple sclerosis and lupus. At best, the evidence leaves the probability of causation with respect to the neck injury equally balanced. If the evidence leaves the probabilities of causation equally balanced, the worker has failed to carry his or her burden of proof. See Harrison, 889 So.2d at 316. Based on the entirety of Magee's medical history, colored by the fact that she was not always candid and forthcoming with her physicians, we find no manifest error in the trial court's conclusion that Magee failed to carry her burden of proof that the neck injuries were caused by the fall at work.
Magee also assigns as error the trial court's finding that she was not disabled as a result of the accident. To be entitled to temporary or permanent total disability benefits, Magee had to establish by clear and convincing evidence that she was physically unable to engage in any gainful occupation, whether or not the same type of work she was engaged in at the time of the injury. Magee's evidence does not meet that test. Several of her doctors indicated that she was able to return to work after the accident. Dr. John. J. Watermeier, the orthopedist who treated her in April and May 2003, concluded that her disability status was "light work." After an independent medical examination, another orthopedist, Dr. Walter R. Abbott, Jr., said he felt Magee's aches and pains from the fall were not of any significance and that she should be able to return to her sedentary work without any problems. The only doctor who opined that she could not return to her previous or similar employment "full-time" was Dr. Dietze, but this was a preliminary opinion, expressed after only one visit with her in August 2003, and before any further tests or treatment. This single opinion does not meet the standard of clear and convincing evidence that she could not engage in any type of work whatsoever. Furthermore, other than this opinion and her own subjective beliefs, Magee presented no evidence that she was unable to earn 90% of her average pre-injury wages. Therefore, we find no error in the court's denial of disability payments or supplemental earnings benefits.
Magee also contends the trial court erred in failing to order the employer to pay unpaid medical bills. However, the evidence does not establish that the medical bills that remain unpaid were causally related to the accident. Some of the invoices were for past due amounts with no explanation of which medical treatments were provided for those amounts. Other bills were for treatment or diagnostic testing related to heart conditions, bladder dysfunctions and incontinence, anxiety, and gastro-intestinal problems. Beyond Magee's own speculation, the evidence does not establish a causal link between those medical services and Magee's fall at work. The remaining invoices were for treatments related to her neck and back complaints, which the trial court determined *812 were not caused by the fall at work. We conclude, therefore, that the court did not err in denying the claim for payment of these unpaid medical expenses.
Magee claims the trial court erred in failing to award penalties and attorney fees for Abek's failure to timely pay medical bills and other benefits. Indeed, the record shows that Abek occasionally did not pay medical benefits within sixty days after receiving written notice of them, as required by LSA-R.S. 23:1201(E). However, according to subsection 1201(F)(2), the penalty subsection shall not apply if the claim is reasonably controverted or if the nonpayment results from conditions over which the employer or insurer had no control. The invoices of which Magee complains fall within this exception. Correspondence between the attorneys for both parties demonstrates that some of the invoices were submitted without information to substantiate that the treatments were actually related to the fall  in fact, some of them were for treatments that the doctors specifically designated were "Not Comp." Also, in one instance, Abek was in the process of negotiating a discount with the hospital where Magee had received her initial emergency room treatment, only to learn in a follow-up call that the bill had been paid in full, apparently by Magee. After confirming that Magee had indeed made this full payment, Abek reimbursed her, even though this resulted in payment above the workers' compensation fee schedule and beyond the sixty-day period after receipt of written notice of the invoice. Other bills were submitted for payment when, in fact, Abek had already paid them. Also, despite the fact that her doctors had not precluded her from working or assigned her any disability status, Magee was paid her full salary through the end of May. Accordingly, we find no manifest error or abuse of discretion in the trial court's refusal to award penalties and attorney fees under this subsection.
Magee further contends that Abek made misrepresentations for the purpose of defeating her claims, and the trial court erred in failing to impose civil penalties under LSA-R.S. 23:1208(D). Specifically, she claims Kobeszko falsely denied knowing that Magee also used the name "Grass," claiming she was trying to hide her medical records from Abek. It is clear that Magee did not try to hide her use of the name "Grass"; her employment application with Abek shows this name in parentheses, she consistently used the name "Grass" in seeking medical treatment for this incident, and her attorney requested medical records in this name as early as April 2003. However, it is also clear that, whatever confusion Kobeszko and/or his attorney had concerning Magee's use of the name Grass, there was no attempt to withhold payments from her or her health care providers as a result. Consequently, we find no manifest error or abuse of discretion in the trial court's failure to award penalties under this subsection.
Finally, Magee asserts as error the court's failure to award court costs in the amount of $1511.95, which she incurred for the deposition testimony of Dr. Dietze. The judgment in this case did not include such an award, and Magee's motion for new trial and to fix costs was denied. LSA-R.S. 23:1317(B) states that the fees of expert witnesses are allowable only when "fixed in the judgment." The Louisiana Supreme Court and this court have held that expert witness fees may only be awarded in a workers' compensation case when fixed in the judgment on the merits between the employer and employee, and cannot be fixed pursuant to a subsequent rule to tax costs. See Jefferson v. Lauri N. Truck Lines, 192 La. 29, 187 So. 44 (1939); Boleware v. City of Bogalusa, *813 01-1014 (La.App. 1st Cir.12/20/02), 837 So.2d 71, 77. As in Boleware, the record in this case shows no effort before, during, or immediately after the trial on the merits to have the workers' compensation judge fix the amount of expert witness fees, nor was there any evidence at trial of the amount that might be attributable to this witness, such that these costs could be included in the judgment. Therefore, we find no error in the decision to deny the post-judgment motion to fix and award the costs attributable to Dr. Dietze's deposition.
In its two related assignments of error, Abek claims the court erred in failing to find that Magee forfeited all past, present, and future benefits, pursuant to LSA-R.S. 23:1208(E), and in failing to order restitution to Abek, pursuant to LSA-R.S. 23:1208(D), for the amounts it expended to her and on her behalf. Abek argues that the evidence reveals numerous instances in which Magee deliberately misrepresented her medical history and current complaints for the purpose of obtaining benefits. Therefore the court's denial of their claims, despite its recognition of Magee's lack of credibility, was error. We disagree. Although the trial court did not explain its decision on this issue, our reading of the record allows the conclusion that Magee did not deliberately make misstatements or omit information for the purpose of obtaining workers' compensation benefits. Most of the inconsistent statements that eventually undermined her credibility in this case were made to various physicians over the course of many years preceding the accident. Both before and since the accident, several of her doctors referred to her mental state, noting she was distracted in her way of speaking and had a psychological overlay, tending toward hypochondria, that may have distorted her perceptions and descriptions of her physical conditions. If, as the evidence suggests, Magee truly believes her current physical problems were caused by the accident and that she is disabled as a result of that incident, then her protestations to that effect are not attempts to defraud her former employer or the court, but simply statements of what she believes to be true. Therefore, while the court obviously concluded Magee's complaints were not totally believable, it could also conclude that her complaints were not deliberate falsehoods. The only deliberate falsehood was her longstanding claim of a spousal relationship with Grass and the use of his surname. However, this was not for the purpose of obtaining workers' compensation benefits, but to obtain health insurance under policies provided by his employer or employers. Therefore, we find no manifest error or abuse of discretion in the court's denial of penalties under the applicable statutes.

CONCLUSION
For the foregoing reasons, the judgment of April 27, 2004, and the amended judgment of July 7, 2004, are affirmed, with each party to bear its own costs of this appeal.
AFFIRMED.
HUGHES, J., dissents with reasons.
HUGHES, J., dissenting.
I respectfully dissent.
I believe the trial court should have awarded the $1511.95 incurred for the trial testimony of Dr. Dietz. In all other respects I agree with the majority.
NOTES
[1] In September 2003, Magee was married to George Grass III. For simplicity, this opinion will use the name she used when her claim was filed.
[2] The appeals of both parties address the judgment on the merits and a later judgment in which the court denied both parties' motions for new trial, but amended the original judgment to clarify its intent.
[3] According to the briefs, the court-ordered surgery to correct the left ulnar nerve injury was performed.
[4] LSA-R.S. 23:1201(F) has since been amended by 2003 La. Acts, No. 1204, § 1.
[5] LSA-R.S. 23:1201.2 was repealed by 2003 La. Acts, No. 1204, § 2, after the date of this accident.