PENZATO, J.
In this workers' compensation proceeding, appellant, Dawn Guy, appeals a judgment dismissing her claims against her employer, appellee, Kelps & Will Prop Shop (Kelps). For the reasons that follow we affirm.
FACTS AND PROCEDURAL HISTORY
Mrs. Guy began working at Kelps in 2007, with her duties including cleaning *573 the building. On September 27, 2016, Kelps terminated Mrs. Guy due to a reduction in workforce. Her husband, Will Guy, who also worked at Kelps, was terminated on October 21, 2016, for the same reason as Mrs. Guy, a reduction in workforce. On December 5, 2016, Mrs. Guy filed a claim for workers' compensation against Kelps, claiming that on October 23, 2014, she suffered a work-related injury while lifting a heavy object.
Mrs. Guy testified at trial that on the date of her injury, she was lifting a garbage bag when she felt a sudden stinging, burning pain in the middle of her back. She let her husband know of the injury that day. The only person at Kelps that she informed about the injury was Gisele Andras, the bookkeeper. Mrs. Guy testified that Ms. Andras instructed her to go to the doctor and that the company would reimburse her for the visit. Ms. Andras testified that she did not know of Mrs. Guy's injury until after the doctor visit when Mrs. Guy submitted a receipt for reimbursement.
Although in her workers' compensation claim, Mrs. Guy asserted that the injury occurred on October 23, 2014, she testified at trial that the injury actually occurred about a week prior to that date, and the medical records are consistent with her testimony. Mrs. Guy was initially treated on October 23, 2014, at the Houma Family Practice Clinic by Dr. Rhonesia Simmons, a primary care physician, who diagnosed her with muscle strain and prescribed a heating pad and Flexeril, a muscle relaxer, as treatment for her injury. Mrs. Guy's medical records reveal that she only complained of mid-back pain at that time, with no complaints being made as to her low back, right hip, or in the groin area. Her medical records also reveal that she had previously seen Dr. Simmons on February 27, 2014, complaining of trouble sleeping, low back pain, and other non-related issues.
Dr. Kirk Dantin treated Mrs. Guy for subsequent visits beginning on January 6, 2015. On that date, Mrs. Guy saw Dr. Dantin for low blood pressure and made no complaints of back pain or hip pain. Dr. Dantin saw Mrs. Guy a week later on January 22, 2015, and she again voiced no complaints of back or hip pain. He testified that a muscle strain usually resolves within anywhere from a few days to a few months.
On April 7, 2015, Mrs. Guy returned with a multitude of complaints, including right hip pain. There was no notation in the medical record of how long she had been suffering hip pain, and following an X-ray, Dr. Dantin determined she had mild degenerative changes in the hip. Dr. Dantin testified that an MRI of Mrs. Guy's hip was ultimately performed on April 28, 2015. The MRI record indicates a history of right hip pain from a fall. Dr. Dantin testified that the study showed an anatomic variant, but required no treatment. Dr. Dantin did not see Mrs. Guy again until April 18, 2016, when she was treated for nasal congestion. She made no mention of back or hip pain at that visit. Dr. Dantin next saw her on October 25, 2016, for pre-operative clearance.
Mrs. Guy testified that she treated with Dr. Jake Bordelon, a chiropractor, beginning in August 2015 for three to four months. The medical records from Dr. Bordelon indicate that he treated Mrs. Guy's entire spine and her right hip.
On September 6, 2016, nearly two years after the workplace accident, Mrs. Guy saw Dr. Phillip McAllister, a neurosurgeon, complaining of low back pain, right hip pain, and balance issues. She provided information in a pre-appointment questionnaire that indicated she had not been hurt at work. Dr. McAllister performed a *574 physical examination and determined that Mrs. Guy was experiencing problems related to her cervical spine. He recommended that she undergo MRI examinations of her cervical and lumbar spine. Dr. McAllister saw Mrs. Guy again on October 4, 2016, at which time her complaints were low back pain, right hip pain, and balance issues. The lumbar MRI reflected some mild facet changes, small anterior osteophytes, disc desiccation, and rudimentary disc at S1-S2, but an otherwise normal lumbar spine. There was also a suggestion of a tiny annular tear at L5-S1. The study of the cervical spine noted disc protrusion at C3-4 with nerve and spinal cord compression.
Dr. McAllister diagnosed Mrs. Guy with cervical stenosis with myelopathy and radiculopathy, and he recommended a cervical fusion. Mrs. Guy did not provide a history to Dr. McAllister of any accidents or trauma or that her condition was work related. Dr. McAllister did not treat Ms. Guy after October 4, 2016, and his medical records note that she was turning the matter over to workers' compensation. When asked if her spinal condition was related to a work injury, Dr. McAllister testified that he did not have a history from the patient of a work-related injury. He further indicated that it would not be possible for Mrs. Guy's cervical injury to cause pain in the low back region. He testified that someone cannot pick up a box and develop the degree of degenerative disease suffered by Mrs. Guy. Speaking hypothetically, he indicated that if a patient had enough pre-existing nerve root or cord compression and lifted something that compressed either the blood supply or the spinal cord enough at that time, it could cause an acute neural injury.
After Dr. McAllister recommended a C3-4 fusion, Mrs. Guy was scheduled to have surgery on November 4, 2016. She testified that she cancelled the surgery because her insurance was terminated.
The parties stipulated that Kelps reimbursed Mrs. Guy her $ 30.00 co-pay for the October 23, 2014 medical visit. Mrs. Guy testified that the pain in her lower back extends to her right hip. She also stated that she saw Dr. Dantin on numerous occasions and reported pain in her back. However, the medical records reflect that Mrs. Guy saw Dr. Dantin on January 6, 2015, January 22, 2015, and April 7, 2015, and there is no report of any injury or back pain on those dates.[1]
The workers' compensation judge (WCJ) held a trial on October 3, 2017,[2] and rendered oral reasons for judgment on February 27, 2018. The WCJ determined that Mrs. Guy had a minor accident on or around October 23, 2014, which resulted in a minor muscle strain to her mid-back. The WCJ also found that because Mrs. Guy's $ 30.00 co-pay was reimbursed by Kelps, she was not entitled to any additional medical benefits, and that the parties stipulated that any claim for indemnity benefits was prescribed. The WCJ also determined that Mrs. Guy had not carried her burden of proof that any injuries to her lower back, right hip, or cervical spine were caused by an accident or injury within the course and scope of her employment and signed a judgment in accordance with her oral ruling on March 23, 2018, dismissing *575 Mrs. Guy's claims. It is from this judgment that Mrs. Guy appeals.
STANDARD OF REVIEW
Although the Louisiana Constitution extends appellate jurisdiction in civil cases to both law and facts, the exercise of this power is limited by the jurisprudential rule that factual determinations of the trier of fact will not be set aside by a reviewing court unless they are manifestly erroneous or clearly wrong. Brewer v. J.B. Hunt Transp., Inc. , 2009-1408 (La. 3/16/10), 35 So.3d 230, 237. It is well-settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). Accordingly, appellate review of the factual circumstances and evidence of the case will not be the basis for reversal of the trial court's judgment, in the absence of manifest error, even if the court of appeal is convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell , 549 So.2d at 844. If the factual findings are found to be reasonable and supported by the record, the trial court's determinations must be given much discretion, especially in regard to the credibility of witness testimony, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell , 549 So.2d at 844. Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Stobart v. State, Dep't of Transp. & Dev. , 617 So.2d 880, 883 (La. 1993).
LAW AND DISCUSSION
Workers' compensation laws provide coverage to an employee for personal injury by accident arising out of and in the course of employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme. He must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. Magee v. Abek, Inc. , 2004-2554 (La. App. 1 Cir. 4/28/06), 934 So.2d 800, 806, writ denied , 2006-1876 (La. 10/27/06), 939 So.2d 1287.
As a threshold requirement, a worker in a compensation action must establish "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031(A) (emphasis supplied); Bruno v. Harbert Int'l Inc. , 593 So.2d 357, 360 (La. 1992). The plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following *576 the alleged incident. Bruno , 593 So.2d at 361. Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Bruno , 593 So.2d at 361. Barring circumstances that cast suspicion on the reliability of the worker's uncontradicted testimony, the fact finder should accept the testimony as true when determining whether the worker has discharged his burden. Brown v. Kwok Wong , 2001-2525 (La. App. 1 Cir. 12/20/02), 836 So.2d 315, 319. In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." Bruno , 593 So.2d at 361 (quoting West v. Bayou Vista Manor, Inc. , 371 So.2d 1146, 1147 (La. 1979) ; citing Holiday v. Borden Chemical , 508 So.2d 1381, 1383 (La. 1987) ). If the evidence leaves the probabilities of causation equally balanced, the worker has failed to carry his or her burden of proof. Harrison v. Baldwin Motors , 2003-2682 (La. App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied , 2005-0249 (La. 4/1/05), 897 So.2d 609. Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ and are not to be disturbed on review unless clearly wrong. Bruno , 593 So.2d at 361.
A claimant's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician. Thus, in many cases, the credibility of the history given by the claimant to his physicians becomes as important as the medical opinions based in part on that history. The rule that questions of credibility are for the trier of fact applies also to the evaluation of expert testimony. Magee , 934 So.2d at 807.
Mrs. Guy alleges that the WCJ erred in determining that her cervical injury requiring surgery was not work related. Mrs. Guy argues that she suffered a work-related injury in October 2014, reported the injury to her co-worker, and received treatment which was paid for by Kelps. She claims that she did not file for worker's compensation benefits at the time of the injury because she was misled to believe that she had an ownership interest in the company. She asserts that after she was terminated, she learned that she had no ownership interest in Kelps and then filed her claim for workers' compensation.
The WCJ found that Mrs. Guy did sustain a minor injury around October 23, 2014. Based on the medical evidence, the WCJ found that Mrs. Guy had not carried her burden of proof that the cause of the problems she currently exhibited in her back, neck, and right hip, and the need for neck surgery, were caused by the October 2014 injury.
In the present case, there is evidence that discredits Mrs. Guy's version of the incident and her testimony is not corroborated by the medical evidence. There is evidence that Mrs. Guy was experiencing low back pain on February 27, 2014, prior to the October 2014 injury. When she initially was seen by Dr. Simmons after the October 2014 incident, she complained only of mid-back pain. On subsequent visits to Dr. Dantin, Mrs. Guy did not complain of back pain, neck pain, or right hip pain. She first complained of right hip pain related to a fall on April 7, 2015, at which time her physical examination was normal. Dr. Dantin opined that the injury Mrs. Guy suffered in October 2014, a muscle strain, should have resolved within anywhere from a few days to a few months. Mrs. Guy first saw Dr. McAllister almost two years after the October 2014 injury, complaining of low back pain, right hip pain, *577 and balance issues. She denied a work-related injury and did not provide a history of accident or trauma to Dr. McAllister.
The only testimony linking the cause of Mrs. Guy's current complaints to the October 2014 injury is that of Mrs. Guy. However, her testimony is not corroborated by other evidence. Given the lack of corroboration in the medical records and medical testimony as to causation, we agree with the WCJ that Mrs. Guy did not carry her burden of proof.
The WCJ found that, taking into consideration the timing as to the dates of visits, dates of treatment, breaks in time between treatment, and the timing between her various complaints, Mrs. Guy initially suffered a minor muscle strain to her mid-back, which had resolved by January 2015. As to Mrs. Guy's remaining cervical, lumbar, and right hip complaints, the WCJ found Mrs. Guy did not carry her burden of proof that any injury to those areas was caused by the October 2014 incident.
We find the factual findings of the WCJ to be reasonable and supported by the record. Therefore, the WCJ's determinations must be given much deference, and we do not find the ruling to be manifestly erroneous or clearly wrong. See Rosell , 549 So.2d at 844.
CONCLUSION
For the above and foregoing reasons, we affirm the March 23, 2018 judgment of the WCJ. All costs of this appeal are assessed against the appellant, Dawn Guy.
AFFIRMED.

As noted earlier, Ms. Guy did report right hip pain to Dr. Dantin with a history of a fall on April 7, 2015.

The trial transcript has the date of the trial as October 3, 2016. However, based on the entirety of the record and the fact that the judgment lists the trial date as October 3, 2017, it is evident that the trial was conducted on the date contained in the judgment.